COMMONWEALTH *vs.* TONY QUINONES.

Hampshire. December 8, 1992. - March 1, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Plea, Transcript of hearing, Assistance of counsel.
*Constitutional Law,* Plea, Assistance of counsel. *Due Process of Law,*
Plea.

The contemporaneous record of the taking of a guilty plea, for purposes of
appellate review in circumstances where the stenographic record was
unavailable, was properly reconstructed by the trial judge's nontestimo-
nial recitation of facts in a memorandum of decision, based on his
memory of the plea colloquy and his customary practice. [431-434]
Nothing in the contemporaneous record of a plea colloquy supported the
defendant's claim that his pleas were coerced or otherwise involuntary.
[434-436]

INDICTMENTS found and returned in the Superior Court
Department on October 11, 1984.

A motion for leave to withdraw pleas of guilty and for a
new trial was heard by *John F. Moriarty,* J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*John J. Stobierski* for the defendant.

*David S. Ross,* Assistant District Attorney, for the
Commonwealth.

WILKINS, J. On May 7, 1985, in the course of trial, the
defendant pleaded guilty to murder in the second degree, and
the trial judge sentenced him to a term of life imprisonment.
He also pleaded guilty to assault with intent to murder and
received a concurrent sentence of from eight to ten years. On
February 25, 1986, the defendant filed a request for a tran-
script. On March 3, 1986, the clerk's office sent a copy of
that request to the court stenographer. On April 11, 1986,

the stenographer's motor vehicle was stolen. That vehicle contained her stenographic notes of the proceeding at which the guilty pleas were accepted, as well as both her notes of the earlier proceedings in the trial (jury empanelment, in-court proceedings, and view) and her notes of an interview between the defendant and his trial counsel. Neither the vehicle nor its contents has been recovered.

On May 14, 1990, the defendant filed a motion to withdraw his guilty pleas and for a new trial.[1] In that motion, the defendant asserted that his guilty pleas were not the product of a knowing, intelligent, free, and voluntary waiver of his constitutional rights against self-incrimination, to trial, and to confront his accusers. He also alleged that his guilty pleas were a result of coercion by trial counsel and a result of his not understanding that, by pleading guilty, he lost any right to appeal from the denial of his pretrial motions to suppress evidence.

The trial judge held a hearing on that motion in August, 1990, and in October, 1990, he denied the motion, filing an extensive memorandum of decision. We transferred the defendant's appeal to this court. In his appeal, the defendant argues that the Commonwealth did not establish that he had been properly interrogated in the course of the taking of his guilty pleas, as required by *Boykin* v. *Alabama*, 395 U.S. 238 (1969). More specifically, the defendant argues that the evidence did not warrant the judge's findings and that the judge was not entitled to reconstruct the record of the plea proceeding by reliance on his memory and on his general practice in taking guilty pleas. In addition to his argument that the reconstructed record of the plea proceedings is inadequate to support the conclusion that the proceedings met constitutional requirements, the defendant argues that his pleas were involuntary based on evidence that he presented at the hearing on his motion to withdraw his pleas. He makes

---

[1]A motion for production of the transcript had been allowed in July, 1986. New counsel was appointed in early 1987 but was allowed to withdraw in July, 1988. A third attorney was appointed in July, 1989. It was he who filed the motion to withdraw the guilty pleas.

an independent claim that his trial counsel was ineffective in not pursuing certain theories of self-defense and provocation. We affirm the order denying the defendant's motion to withdraw his pleas.

We summarize and, in many instances, quote directly from the judge's findings of fact and reconstructed record which, the judge stated, were based on "the evidence presented at [the] hearing [on the motion], together with my own memory of the 1985 proceeding, my knowledge of my own practice in taking and accepting pleas of guilty, and my review of the papers that are available in the court files (including findings made by me after a hearing on the defendant's motions to suppress evidence)." The stenographer and defense counsel testified, but they provided evidentiary support for only a portion of the facts found by the judge.[2]

On September 21, 1984, the defendant shot and killed William Diaz at an apartment complex in Northampton. "Diaz was shot in the back of the head as he and the other victim, Ivan Rivera, fled from the defendant. The shooting followed an altercation in and just outside [an apartment occupied by the defendant's mother and other members of his family] during which Diaz struck one of the defendant's sisters and either pushed or struck his mother." Diaz had been living in the apartment with one of the defendant's sisters. The defendant fled to New York where he was arrested on October 2, 1984. He was indicted on October 11, 1984, and he retained private counsel, who, when not compensated as agreed, was appointed by the court.

Counsel undertook an investigation, meeting with the defendant on three or four occasions and with members of the defendant's family on several occasions. "It became apparent to [counsel] that the Commonwealth had a very strong case. There was never any doubt that the defendant had fired the

---

[2]The stenographer testified that the judge had a specific set of questions he normally asks. "The colloquy is always the same. I don't have any memory that it was anything out of the ordinary that happened or anything different was asked." Defense counsel testified that the judge asked the defendant a set of questions consisting of a plea colloquy.

shot that killed Diaz. The defendant had admitted that much from the beginning, and there had been a large number of witnesses to the shooting. The defendant's position was that he had been justified in shooting Diaz because Diaz had struck" the defendant's mother and sister and because he had acted in self-defense. However, "[t]he plausibility of self-defense as a viable justification for the killing was substantially undercut by the fact that the two victims had been running away from [the defendant] when the fatal shot was fired and by the fact that Diaz had been struck in the back of his head. There was no evidence that either victim was armed, and [the defendant] had admitted that he had not seen a weapon on either man prior to the shooting." Counsel "attempted to obtain expert testimony to the effect that the defendant's Hispanic culture had made him particularly sensitive to affronts against his family, but he was unable to do so. He finally concluded that the evidence of provocation, even if sufficient to require a judge to charge the jury on the law of voluntary manslaughter, was not sufficiently strong to convince a jury that malice had not been proved when considered in light of the fact that the victim had been shot in the back of the head while attempting to flee from the defendant." There was evidence that the defendant had lied to the police concerning the circumstances under which he had obtained the gun and that the defendant hid the gun in the cellar of an apartment block where a woman lived whom the defendant described as his "common law" wife.

On the day scheduled for trial, the defendant requested that new counsel be appointed for him. The judge concluded that trial counsel, who had performed ably in presenting the defendant's pretrial motions, was prepared to defend the defendant and that there was no good reason to appoint new counsel.

After the jury were empanelled, the prosecution inquired whether the defendant would be willing to plead guilty to murder in the second degree. A discussion followed in which family members participated with defense counsel and the defendant. Counsel explained the difference between murder

in the first degree and murder in the second degree and the sentencing differences. "He also told them that in his opinion there was very little chance that a jury would return a verdict of anything less than murder in the second degree if the case were tried to a conclusion, and a substantial risk that the jury would return a verdict of guilty of murder in the first degree." The circumstances that led to the defendant's guilty pleas are set forth in the margin.[3]

We pause at this point to indicate that the findings that we have just recited dispose of any factual basis for the claim that defense counsel coerced the defendant into pleading guilty. They also cast doubt on the defendant's claim that he

---

[3]"The defendant was disappointed in the choice he was forced to make. He had hoped that [his counsel] would be able to negotiate a plea of manslaughter. [His counsel] told him that the prosecutor was adamant in his refusal to agree to such a plea. The defendant then requested an opportunity to discuss the matter alone with his family and [counsel] made arrangements so that that could be done.

"The defendant's mother . . . was convinced that the risk of going to trial and facing a first degree murder conviction outweighed any possibility that her son could gain an acquittal or a manslaughter conviction. She therefore pleaded with him to accept the prosecutor's offer and plead guilty to murder in the second degree.

"At the conclusion of the family conference the defendant told [his counsel] that he was prepared to offer a plea of guilty of murder in the second degree of William Diaz." The prosecutor agreed that in exchange for a plea of guilty to the second indictment he would recommend a concurrent sentence of not less than eight years and not more than ten years on that conviction. That was the arrangement that was finally made.

"Before the agreement with the Commonwealth was finalized, [counsel] conducted another interview with the defendant in the presence of the court reporter. He explained again the terms of the proposal that had been made and the consequences of accepting it. He reviewed the evidence that he expected the Commonwealth would produce if the case were to go to trial, and he advised the defendant again of his analysis of the applicable law and his opinion as to the probable results of a trial. Although he recommended acceptance of the Commonwealth's proposal as the best and most sensible course of action under the existing circumstances, he emphasized that the choice to be made was that of the defendant alone, and that he was prepared to represent the defendant at trial to the best of his ability if the defendant decided to reject the proposal and proceed to trial. The defendant acknowledged that he understood everything that [his counsel] explained to him and indicated that he wished to accept the Commonwealth's proposal."

did not know that he could not appeal the denial of his motions to suppress. These findings strongly support a conclusion that the defendant's guilty pleas were in fact knowing and voluntary, and they give no support to his claim that counsel was ineffective in a constitutional sense. The principal issues not addressed by these findings are whether the record of the acceptance of the guilty pleas was properly reconstructed and whether, as reconstituted, it meets the requirements of *Boykin* v. *Alabama, supra,* and its successors. We continue then with the judge's findings because they bear on these points.

"The defendant came into court and offered his plea of guilty in accordance with the agreement. . . . I conducted what I believe was a complete and careful plea colloquy with the defendant. I found him to be a young man of normal intelligence who, although of Hispanic origin and bilingual, had a very adequate command of the English language.

"I began by telling the defendant that although his proffered pleas were based upon an agreed upon recommendation as to the sentences to be imposed, I was not bound to accept that recommendation. I assured him, however, that if for any reason I decided to reject the recommendation and exceed it, I would give him an opportunity to withdraw his pleas of guilty if he desired to do so. The defendant acknowledged that he understood what I had told him.

"I then explained to the defendant the possible consequences of his pleas of guilty. . . . The defendant acknowledged that he understood.

"I then told the defendant that he still had a right to a trial on the charges of which he had been indicted. The jury had already been empanelled and sworn and were prepared to begin hearing the evidence in his case if he wished to avail himself of that right. I told him that if he did elect to go to trial the Commonwealth would have the burden of proving his guilt beyond any reasonable doubt, and that he could not be convicted of any offense unless all of the deliberating jurors unanimously agreed that he was guilty; but that by pleading guilty he was giving up and surrendering forever his

right to a trial and admitting that he was guilty of the crimes to which he was pleading guilty. In response to a direct question the defendant assured me that he understood what I had told him and that he did wish to waive his right to a trial and plead guilty to murder in the second degree and to assault with intent to murder.

"I next explained to the defendant that he had a right to be confronted by the witnesses against him which he was also giving up and surrendering by pleading guilty. I told him that if his case did go to trial the prosecution would have to produce all its witnesses in court and in person; that they would all be required to testify under oath; and that they would all be subject to cross-examination by his attorney. I explained that if his pleas of guilty were accepted there would be no need of witnesses, so that by pleading guilty he was automatically surrendering his right to be confronted by those witnesses. The defendant stated that he understood.

"I also told the defendant that he had a right to not incriminate himself which he was also giving up by pleading guilty. I told him that if he did elect to go to trial he would not have to take the stand and testify himself unless he wished to do so; and that if he did decide not to testify no inference could be drawn against him for not testifying. I pointed out to him that by pleading guilty he was obviously surrendering that right and he said he understood.

"I finally asked the defendant if he was sure he wanted to give up the rights I had described and he assured me that he was sure.

"In the course of the colloquy I asked the prosecutor to tell me what evidence he expected the Commonwealth would produce against the defendant if the case were to go to trial and I instructed the defendant to listen carefully and then to tell me if he agreed or disagreed with what the prosecution said. The prosecutor gave a recitation of the anticipated evidence which, if believed, would have clearly warranted the jury in returning a verdict of guilty of murder in the first degree of William Diaz and guilty of assault with intent to murder Ivan Rivera. The defendant agreed that the prosecu-

tor's recitation of the facts was substantially accurate. I explained to the defendant that by pleading guilty to murder in the second degree he was admitting not only that he shot and killed Diaz but also that he did so with malice aforethought which meant that he shot with the intention of either killing Diaz or inflicting serious bodily injury upon him, and that he did so without justification. I also explained to him that by pleading guilty to assault with intent to murder Rivera he was admitting that he had shot at Rivera with the specific intention of killing him, and that he had done so without justification.

"I do not, of course, remember the precise language that I used in this portion of the colloquy or the precise responses that were made by the defendant. I do remember, however, that by the time the colloquy was concluded I was completely satisfied that he had indeed intentionally shot and killed Diaz without any provocation which would warrant a reduction of the degree of homicide to manslaughter, and without any justification for his action. I was equally satisfied that he had intentionally shot at Rivera with the specific intention of killing him, and that that shooting also had been without provocation or legal justification. I also was satisfied that his decision to plead guilty to murder in the second degree and to assault with intent to murder was a completely voluntary decision on his part, and that it was intelligently made after a careful assessment of his position by him with the assistance of his attorney. I accordingly accepted his pleas of guilty and imposed sentence in accordance with the joint recommendation of the parties."

The trial judge then turned to the defendant's claim that he did not understand that by pleading guilty he was waiving his right of appeal. "At this time I have no specific memory of discussing that waiver with the defendant. I do know, however, that it was my practice (and still is) to advise defendants pleading guilty that they are waiving any right of appeal they might otherwise have had from adverse findings and rulings on pre-trial motions whenever it is appropriate to do so. In this case I had personally conducted the hearing on

the defendant's motions to suppress and had entered complete written findings within a few days prior to accepting the defendant's pleas, so I believe it is highly probable that I did so advise the defendant in the course of the plea colloquy[4]."

"Even if I did not advise the defendant that he was waiving his right of appeal from the pre-trial rulings, however, I am absolutely certain that I told the defendant that by pleading guilty he was giving up and surrendering forever his right to a trial on the charges that had been placed against him. I do not believe that he could seriously have believed that although he was giving up and surrendering his right to trial, he was nevertheless retaining the right to seek a reversal of the rulings on his pre-trial motions. His suggestion to the contrary is disingenuous at best."

The judge then stated this over-all conclusion: "At the time when I accepted the defendant's pleas I was convinced beyond any reasonable doubt that the pleas were voluntary and were made with a complete understanding of the charges of which he had been indicted and the charges to which he was pleading guilty. I am still convinced that such was the case."

We now consider the substance of the defendant's claim that he should be allowed to withdraw his guilty pleas. The crucial, over-all question is whether the pleas were made voluntarily with complete understanding of the charges. See *Boykin* v. *Alabama*, 395 U.S. 238, 242-244 (1969); *McCarthy* v. *United States*, 394 U.S. 459, 464-465 (1969). A judge should, therefore, not accept a plea unless satisfied that the plea is voluntary and that the defendant understands the nature of the charges. See Mass. R. Crim. P. 12, 378 Mass. 866 (1979). The Commonwealth has the obligation to prove that the contemporaneous record of the plea meets certain standards. *Commonwealth* v. *Foster*, 368 Mass. 100, 103,

[4]"At the hearing on the motion for a new trial the defendant testified that he did not remember whether or not I advised him that he was waiving his right of appeal by pleading guilty."

107-108 (1975).[5] The term "contemporaneous record" includes "not only the proceedings on acceptance of the plea, but the record of trial, if there was one, preceding the plea, so far as that record may have any substantial bearing on the question whether the defendant made the plea willingly and intelligently." *Commonwealth* v. *Foster, supra* at 108 n.6. If the record is unavailable, it may be reconstructed through testimony or other suitable proof of what happened in court when the guilty plea was taken. See *id.; Commonwealth* v. *Duest,* 26 Mass. App. Ct. 137, 145 (1988). If the record as so reconstructed is facially deficient, the Commonwealth may not supplement it with proof that the plea was in fact knowing and voluntary. *Commonwealth* v. *Foster, supra* at 108 n.7.

We start with the question whether the contemporaneous record properly may be reconstructed by the trial judge's recitation in a memorandum of decision of what he remembers of the plea colloquy and by his reliance in some instances on his regular practice in the taking of guilty pleas. We have no difficulty in accepting a trial judge's recitation of fact concerning what happened in open court before him. We do so even when, as would almost always be the case, the judge recalls only the substance of the colloquy and not the precise words used. We see no impropriety, moreover, in relying on a judge's customary practice in taking guilty pleas to reconstruct the record.[6] The practice has been accepted in similar, but not identical, circumstances.[7]

---

[5]We shall assume that the Supreme Court would hold that a "fatally inadequate" record of a plea proceeding in a State court may not be supplemented by extraneous evidence. See *Commonwealth* v. *Foster,* 368 Mass. 100, 108 n.7 (1975).

[6]This conclusion is particularly appropriate as to this experienced senior trial judge who had been a Superior Court justice for almost fourteen years when he accepted the pleas and for almost twenty years when he made his findings and rulings.

[7]Where a defendant has challenged the use of prior convictions to enhance the penalty imposed following a subsequent conviction, courts have accepted customary practices to establish that a prior plea of guilty was knowing and voluntary. See *United States* v. *Warren,* 973 F.2d 1304,

The closer question is whether a judge's recitation of what happened, and particularly the judge's reliance on his customary practice, may properly be presented as it was in this case, or, whether to satisfy a defendant's constitutional right of confrontation of witnesses against him, the judge must be a witness in a hearing held before another judge.[8] We are aware of no authority either way on this issue. The question was adverted to in *Commonwealth* v. *Duest, supra* at 147,

1309-1310 (6th Cir. 1992) (unrebutted affidavit of judge concerning his practice in accepting plea satisfies government's burden); *United States* v. *DeForest*, 946 F.2d 523, 525-526 (7th Cir. 1991), cert. denied, 112 S. Ct. 1235 (1992), and cases cited ("[i]n the absence of a transcript, the testimony of the defendant's attorney as to his and the trial court's custom and practice with respect to guilty pleas is sufficient to demonstrate compliance with [*Boykin's*] constitutional standards"); *United States* v. *Dickens*, 879 F.2d 410, 412 (8th Cir. 1989) (evidence of custom sufficient to establish that guilty plea knowingly and voluntarily made; attorney's "testimony clearly established that the trial judge consistently followed the practice of probing a defendant's understanding of the meaning and consequences of his guilty plea . . . [and that it was the attorney's] practice to thoroughly advise his clients in advance of the rights they would be waiving by entering a guilty plea"); *United States* v. *Goodheim*, 686 F.2d 776, 777-778 (9th Cir. 1982) ("clear and convincing" evidence of "the general practice of a trial judge" sufficient to "establish whether the guilty plea had been voluntarily and intelligently made"). Cf. *United States* v. *Taylor*, 882 F.2d 1018, 1031 (6th Cir. 1989), cert. denied, 496 U.S. 907 (1990) (record of conviction certifying knowing and voluntary waiver shifted burden to defendant).

These cases involve collateral attacks on pleas, not direct challenges. Their reliance on custom, however, to meet what they perceived to be the government's burden supports our conclusion. It is clear now that the burden is on the defendant, in the sentencing enhancement context, to rebut the presumption that prior convictions are valid. See *Parke* v. *Raley*, 113 S. Ct. 517, 519, 521-526 (1992).

[8]Of course, the judge need not be a witness. The testimony of other people who were in the courtroom could provide an adequate basis to reconstruct the record. One court has accepted as adequate unrebutted records of convictions that certified that the defendant had made a knowing and voluntary waiver of his constitutional rights. See *United States* v. *Taylor, supra* (collateral attack). Transcripts or tape-recordings of other plea-taking proceedings presided over by the judge could demonstrate the judge's custom. A regular practice of tape recording all plea proceedings could help avoid a repetition of the problem presented in this case. A regular practice of filing a plea document in which the defendant acknowledges the subjects that were brought to his attention would also be helpful.

but the court did not have to answer it. In the area of the taking of guilty pleas, where the pattern of questioning must follow a well-prescribed course and a judge sitting in criminal sessions repeats the process many times in the course of a year, a judge's nontestimonial recitation of facts based on his usual practice may properly support the reconstruction of the record. This is particularly so when, as here, the defendant produces no evidence to the contrary. Cf. *United States* v. *Warren*, 973 F.2d 1304, 1309-1310 (6th Cir. 1992) (collateral attack) (affidavit of sentencing judge stating that his usual practice was to ensure that the defendant's plea was made freely and voluntarily and that the defendant was aware of the charges against him shifted burden to the defendant to show that his *Boykin* rights were denied); *United States* v. *Taylor*, 882 F.2d 1018, 1031 (6th Cir. 1989), cert. denied, 496 U.S. 907 (1990) (collateral attack) (records of convictions certifying that defendant had made voluntary and knowing waiver shifted burden to defendant). There is no suggestion in this case of judicial bias that would cast doubt on the impartiality of the judge's findings and rulings.[9] The judge is not acting as a witness against the defendant in a constitutional sense.

We now consider the defendant's challenges based on the reconstructed record. The defendant argues that the reconstructed record fails to show that the judge inquired about coercion or other wrongful inducements that might have led the defendant to plead guilty. It is true that the subject of wrongful inducements was not raised directly. The question whether a defendant was subject to undue pressure to plead guilty must be considered in some manner on the record. *Commonwealth* v. *Foster*, *supra* at 107. No particular form of words need be used in the required inquiry of a defendant. *Commonwealth* v. *Lewis*, 399 Mass. 761, 764 (1987). But a brief colloquy that does not probe the defendant's mind will not do. See *Commonwealth* v. *Fernandes*, 390 Mass. 714,

---

[9] We see nothing in the judge's comments at the conclusion of the hearing (or elsewhere) that makes questionable the soundness of his findings.

717-719 (1984). Here the subject of the defendant's understanding and voluntariness was not investigated in a perfunctory fashion. The judge carefully explained the defendant's trial rights. The defendant assured the judge that he understood that he was incriminating himself by pleading guilty and that he was sure that he wanted to give up his right to a trial. The prosecutor then recited the facts that he intended to prove; the defendant agreed that the facts were substantially accurate; and the judge explained in terms of the elements of the crimes what specifically the defendant was admitting was true. The defendant thus had numerous opportunities to tell the judge in response to specific inquiries that he was under improper pressure erroneously to agree to the facts of his crimes.

The defendant argues that his pleas were involuntary because he was not told and did not know that by pleading guilty he would lose his right to appeal the denial of his motions to suppress evidence.[10] The loss of this right is not one that due process requires be discussed in the plea colloquy. The judge concluded that it was highly probable that he did advise the defendant on this subject. In any event, the judge told the defendant that "by pleading guilty he was giving up and surrendering forever his right to a trial on the charges . . . against him." To the extent that the defendant's lost appellate rights argument is an attack on the adequacy of the reconstructed record we reject it.

Moreover, the defendant did nothing to pursue his appellate "rights" for five years. The judge was fully warranted in concluding that the defendant's claim was "disingenuous at best." We, therefore, reject the defendant's lost appellate rights argument to the extent that it is based on a consideration of the extraneous record.

---

[10]There was evidence that the defendant had come from New York and had had exposure to the criminal justice system there. He testified that he was aware that in New York a guilty plea does not waive appellate rights concerning the denial of pretrial motions in some circumstances. See N.Y. Crim. Proc. Law § 710.70 (2) (McKinney 1984).

We consider now the defendant's additional arguments not based on claims that the reconstructed record was facially inadequate. The defendant asserts that he was forced to plead guilty because the judge improperly denied his request for the appointment of new trial counsel. The judge's denial was within his discretion, particularly in light of the reasons that the defendant gave for his last-minute request. See *Commonwealth* v. *Moran*, 388 Mass. 655, 658-660 (1983). We know, from the judge's findings of fact, that there was adequate communication between counsel and the defendant (and the defendant's family). The attorney investigated the possibility of success on a claim of self-defense and rejected it as most unlikely to succeed where the unarmed victims were running away from the defendant and the one who was killed was shot in the back of the head. Additionally, defense counsel investigated and found wanting any chance of obtaining a manslaughter verdict on the theory of provocation. Although defense counsel recommended that the defendant plead guilty as he did, defense counsel made clear to the defendant that the choice was the defendant's to make. Whatever pressure or discouragement the defendant may have felt because of the denial of his motion for the appointment of new counsel, it may not be the basis of a finding of an absence of voluntariness.[11]

The order denying the motion to withdraw the guilty pleas and for a new trial should be affirmed.

*So ordered.*

---

[11]Our discussion of this argument puts to rest as well the defendant's claim that his counsel was ineffective in a constitutional sense.