Tony QUINONES, Petitioner,

v.

James MATESANZ, Respondent.

Civil Action No. 98–10733–MEL.

United States District Court,
D. Massachusetts.

June 22, 2001.

James J. Cipoletta, Cipoletta & Ogus, Revere, MA, for Tony Quinones.

Tony Quinones, Norfolk, MA, pro se.

Elizabeth K. Frumkin, Bonny M. Gilbert, Assistant Attorney General, Criminal Bureau, Boston, MA, for James Matesanz.

## MEMORANDUM AND DECISION

LASKER, District Judge.

On May 7, 1985, Tony Quinones retracted his plea of not guilty and pled guilty to second degree murder and assault with intent to murder. In accord with the agreement reached by the parties, Judge John F. Moriarty of Hampshire County Superior Court sentenced Quinones to life

in prison on the second degree murder charge and a concurrent sentence of eight to ten years on the assault charge. Quinones did not seek direct appellate review of his conviction.

Five years later (May 14, 1990), Quinones filed post-conviction motions to withdraw his guilty pleas and for a new trial (the "reconstruction" motions) on the ground that he purportedly did not plead guilty voluntarily or with the effective assistance of counsel. On October 23, 1990, Judge Moriarty denied Quinones' reconstruction motions. On March 1, 1993, the Supreme Judicial Court ("SJC") affirmed the trial court's denial of the reconstruction motions in *Commonwealth v. Quinones*, 414 Mass. 423, 608 N.E.2d 724 (1993).

Four years later (March 25, 1997), Quinones filed a second set of post-conviction reconstruction motions with the Suffolk Superior Court arguing substantially the same grounds with an added count alleging that the reconstruction hearing was constitutionally infirm. On May 15, 1997, these motions were denied, a decision which was affirmed, without opinion, by both the Appeals Court and the SJC. *Commonwealth v. Quinones*, 44 Mass.App.Ct. 1110, 691 N.E.2d 248 (Mass.App.Ct.1998) (table); *Commonwealth v. Quinones*, 427 Mass. 1103, 707 N.E.2d 1076 (1998) (table).

On April 14, 1998, thirteen years after his initial conviction, Quinones filed, pursuant to 28 U.S.C. § 2254, this petition for a writ of habeas corpus. The Commonwealth then moved to dismiss the petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[1] on the ground that Quinones' claims had not been exhausted and that they were, in any event, time-barred. The Commonwealth's motion was denied. *Quinones v. Matesanz*, No. 98–10733 (D. Mass. filed May 1, 2000).

Quinones' thorough petition, prepared with the assistance of counsel appointed under the Criminal Justice Act, asserts two areas of alleged constitutional error:

(1) that Judge Moriarty's use of his recollection and common practices in determining the reconstruction motions violated Due Process and the Confrontation Clause; and

(2) that the Commonwealth did not prove that his initial plea of guilty was the product of a knowing, intelligent and voluntary waiver of his constitutional rights as required by *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

For reasons similar to those stated in the SJC's thorough opinion, the petition is denied.

## I.

In September of 1984, William Diaz was living with his girlfriend, one of Quinones' two sisters, in the Quinones family's apartment in Northampton.[2] On September 21, 1984, Diaz had a disagreement with Quinones' other sister inside the Quinones' apartment. At some point during this dispute, Diaz struck the sister and pushed or struck Quinones' mother. Quinones argues that Diaz came back later and again hit Quinones' sister and mother outside of

---

**1.** Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104–132, 110 Stat. 1214 (codified as amended in scattered sections of 8, 18, 22, 28, 40 & 42 U.S.C.). The portion of the statute which contains the applicable statute of limitations has been codified as amended in 28 U.S.C. § 2244 and the exhaustion requirement is contained in 28 U.S.C. § 2254(b).

**2.** The SJC's opinion in this matter contains a more detailed rendition of the facts. Quinones, 608 N.E.2d at 727–30.

the apartment. Quinones asserts that at that time, "someone" gave him a gun that he then (in response) used it to assault Diaz and Ivan Rivera (Diaz's friend who was with him at the time). As Diaz and Rivera fled, Quinones shot Diaz in the back of the head and killed him.

Quinones admitted, and a large number of witnesses confirmed, that he shot Diaz. The initial pre-trial procedural battle in the case revolved around Quinones' four suppression motions. Quinones lost three of the suppression motions leaving the disputed issues for trial whether Quinones' actions were justified by self-defense or constituted the lesser offense of voluntary manslaughter. Because Quinones faced what his counsel thought was an uphill battle on either of these theories, he recommended that Quinones plead guilty to second degree murder and assault with intent to murder. Although Quinones was apparently unhappy with the deal, he agreed to plead guilty after some tense discussions. Quinones' plea was accepted by Judge Moriarty after the usual hearing, and he was sentenced to life in prison on the second degree murder charge and a concurrent sentence of eight to ten years on the assault charge.

Although Quinones did not appeal, on February 25, 1986, he requested a transcript from the court, which forwarded the request to the court reporter who had taken notes during the relevant hearings. Unfortunately, after Quinones' request had been made, but before it had been processed, the court reporter's car was stolen along with the notes from the relevant hearings.

Four years later, on May 14, 1990, Quinones filed the reconstruction motions asserting that his initial plea of guilty was not the product of a knowing, intelligent and voluntary waiver of his constitutional rights as required by *Boykin*, 395 U.S. at 242, 89 S.Ct. 1709. Judge Moriarty, the judge who heard the initial plea, then held a thorough, three-day evidentiary hearing, resulting in a three hundred page transcript. At the hearing, Quinones, his defense counsel and the court reporter testified. The court reporter and Quinones' defense counsel testified that Judge Moriarty conducted the plea colloquy in the ordinary extensive manner which was his usual procedure and which was required by law. *Respondent's Supplemental Answer*, 1, vol. I, p. 88–90; vol. II, p. 79. Quinones' counsel for the hearing then requested that Judge Moriarty take the witness stand. After declining to do so, the judge commented extensively about his memory of the initial plea and his common practices. In sum, he stated that: his ordinary practice was to be "particularly cautious" in appraising a pleading defendant of her rights; and that he recalled following his practice in this specific instance. *Respondent's Supplemental Answer*, 1, vol. III, p. 63–69, *Quinones*, 608 N.E.2d at 728–30. Based on this evidence, Judge Moriarty denied Quinones' motion. The correctness of this decision in which he relied on his own memory is what is at issue in the instant petition.

## II.

*Does the Constitution Allow a Judge who Conducted a Plea Colloquy Both to Preside Over the Reconstruction Hearing Challenging the Plea and Depend on his Recollection of the Plea?*

■ Quinones' Due Process and Confrontation Clause claims focus on Judge Moriarty's reliance on his memory and his common practices in deciding the reconstruction motion. Quinones argues that Judge Moriarty compounded his purported constitutional error of reciting his memory at the hearing by including "untested" de-

tailed findings that expanded on his oral statements in his decision.[3] Quinones argues that Judge Moriarty's actions, which were affirmed by the SJC, constituted an unreasonable application of the Supreme Court's decision in *In re Murchison,* 349 U.S. 133, 136–139, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

Quinones' argument is without merit. In *Murchison,* a state court judge acted as a "one-man grand jury" investigating police corruption. While in his role as grand juror, the judge was convinced that two witnesses lied and committed contempt during their testimony. The judge charged the two witnesses with contempt and subsequently tried and convicted them based heavily on his recollection. *Murchison,* 349 U.S. at 134–35, 75 S.Ct. 623.

The Supreme Court held that the subsequent trial on the contempt charges violated Due Process and the Confrontation Clause because it was presided over by the same judge who: (1) was "prosecuting" the contempt charges; and (2) convicted the defendants based primarily on his recollection. *Murchison,* 349 U.S. at 137–39, 75 S.Ct. 623. In doing so the Court commented:

A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases *where he has an interest in the outcome.* That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however-

er, that every procedure which would offer a possible temptation to the average man as a judge not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way justice must satisfy the appearance of justice.

*Murchison,* 349 U.S. at 136, 75 S.Ct. 623 (citations omitted) (emphasis added).

The question then becomes whether Judge Moriarty had a "bias," "interest" or the appearance of such, in the reconstruction proceeding. Here, there has been no showing even of an appearance of bias or interest. Unlike the judge in *Murchison,* Judge Moriarty was not involved in the prosecution of the case or in any other conduct which might be perceived as tilting the scales in favor of the prosecution.

Instead, to show "bias" or "interest," Quinones relies upon the fact that Judge Moriarty accepted the initial pleas and verified their lawfulness. From this singular fact, Quinones speculates that Judge Moriarty's conduct at the reconstruction hearing either was, or appeared to be, biased.

Such rank speculation about a judge's possibly improper motives is clearly insufficient to implicate *Murchison*'s prophylactic rule. *United States v. Smith,* 337 F.2d 49, 51 (4th Cir.1964) (holding that consistent with Due Process a judge presiding over a reconstruction hearing may use his own recollection of the initial plea in reaching his decision if there has been

---

**3.** Quinones makes much of the fact that Judge Moriarty's written findings were more detailed than his statements at the hearing. This fact has no significance. There is noth-

ing surprising or insidious about a judge refining oral statements made in court into a more elaborate written opinion.

no showing of bias); *cf. United States v. Martorano,* 620 F.2d 912, 919 (1st Cir. 1980) ("we think the mere fact that a judge entertains a motion for new trial in a case over which he presided initially does not reasonably call·into question his impartiality ... it may be advantageous ... because of [the original judge's] familiarity with earlier proceedings").

■ Moreover, in habeas petitions, a federal district court must apply a standard of review deferential to the state court. Under the habeas standard applicable here, Quinones' petition cannot be granted unless the state court's decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Accordingly, even assuming that some of the broad language in *Murchison* should have been interpreted by the state court as mandating a decision in favor of Quinones, its contrary decision should not be reversed unless it· is "outside the universe of plausible, credible outcomes." *O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir.1998). The significant factual disparities between *Murchison* and this case (*Murchison* involved a *trial* instead of a reconstruction hearing, the judge was the *only* witness to the conduct in question, took a *prosecutorial* role in the case and was the *complaining witness* ) as well as federal circuit precedent failing to find a constitutional violation under indistinguishable circumstances demonstrate that the SJC's decision, even if wrong, would not be egregious enough to justify habeas relief.

## III.

*Were Quinones' Guilty Pleas the Product of a Knowing, Intelligent and Voluntary Waiver of his Rights?*

■ Quinones alleges that his guilty pleas were involuntary under *Boykin* be-cause "he testified that he did not remember any colloquy, that he was coerced into pleading guilty by his trial attorney, that he pleaded guilty because his attorney would not advance the theory of self-defense or provocation on his behalf, that he was not allowed to discharge his trial counsel who he felt was not acting in his best interests, and that he did not know that he was waiving the right to appeal the denial of his suppression motions when he entered his pleas." *Pet. Memo.* at 19. Quinones places special emphasis on the fact that, even after he pleaded guilty, he thought he could appeal Judge Moriarty's decisions denying his pre-trial suppression motions. To support this claim, he states that he has been involved in the criminal justice system in New York and that under New York law, similar pre-trial suppression motions can be appealed even after a guilty plea.

■ As a threshold matter, the standard for evaluating Quinones' claim is not *Boykin* (used to evaluate direct appeals) but is instead contained in the Supreme Court's opinion in *Parke v. Raley,* 506 U.S. 20, 29–30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). In *Parke,* the Supreme Court held that absent a showing of interest or bias, in a *collateral attack* on a guilty plea, the "presumption of regularity" and "finality" replaces the *Boykin* "presumption of invalidity." *Parke* 's presumption means that absent a showing of bias, it is the defendant's (i.e. Quinones') burden to prove that his plea was not voluntary. As described in detail above, Quinones has not made such a showing and accordingly, under *Parke,* it is Quinones' burden to prove that his plea was not voluntary, which he has not done.

That being said, even if Quinones' claim were to be analyzed under *Boykin,* it is

without merit. As the SJC noted, "the crucial, over-all question is whether [Quinones'] pleas were made voluntarily with complete understanding of the charges." *Quinones,* 608 N.E.2d at 730 (citing *Boykin,* 395 U.S. at 242–44, 89 S.Ct. 1709 and *McCarthy v. United States,* 394 U.S. 459, 464–65, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). The record emphatically supports the state courts' conclusion that Quinones' pleas were voluntary.

The testimony of the court reporter and Quinones' defense counsel and the recollection of the Judge Moriarty all describe a plea colloquy which (at the very least) comported with all applicable legal requirements. Judge Moriarty also concluded that it was "highly probable" that he specifically informed Quinones that he was giving up his right to appeal the suppression decisions. *Quinones,* 608 N.E.2d at 732.

Quinones' solitary counter is his assertion that he was unaware that he was giving up his right to appeal the suppression decisions. As the SJC concluded, this self-serving declaration is belied by the fact that in spite of his claim that he was relying on his right to *appeal* the suppression decisions, Quinones never attempted to do so. *Quinones,* 608 N.E.2d at 732. Instead, he waited almost five years and until after he discovered that the plea transcript had been lost to raise this claim. Under these circumstances, it cannot be said that the SJC unreasonably applied either *Parke* or *Boykin* in concluding that Quinones had been informed that in pleading guilty he was waiving any right to appeal the suppression decisions.

Indeed, it is questionable whether Quinones had a constitutional right to be informed at the plea hearing that he was waiving his right to appeal the suppression decisions. *United States v. Floyd,* 108 F.3d 202, 204 (9th Cir.1997) (no constitutional right to be informed of waiver of right to appeal based on suppression motions at plea colloquy); *United States v. Bell,* 966 F.2d 914, 917 (5th Cir.1992) (no constitutional right to be informed of waiver of right to appeal based on pre-trial matters at plea colloquy); *United States v. Fisher,* 772 F.2d 371, 375 (7th Cir.1985) (same). Given this substantial federal authority agreeing with the SJC's ruling on this matter, there remains no basis to hold that such a decision was "an unreasonable application of clearly established Federal law" within the meaning of AEDPA. 28 U.S.C. § 2254(d)(1).

Quinones' other challenges to the voluntariness of his plea, which are mentioned only in passing, are also without merit. The SJC's findings on issues such as defense counsel's conduct and competency are amply supported in the record and demonstrate that the plea should be upheld.

The petition is dismissed.

It is so ordered.