### Commonwealth *vs.* Willie Furr.

Suffolk. March 3, 2009. - June 12, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Practice, Criminal,* Plea, New trial. *Constitutional Law,* Plea. *Due Process of Law,* Plea.

A trial court judge did not err in denying a criminal defendant's 2006 motion to withdraw a plea of guilty to charges arising out of a robbery in which the defendant had participated in 1997, where the defendant's admissions to the Commonwealth's recitation of facts in the plea colloquy were adequate substitutes for certain unexplained elements of the crimes to which the defendant pleaded guilty [107-110]; where the contemporaneous record adequately supported the conclusion that the defendant's plea was voluntary [110-111]; and where there was no merit to the defendant's claim that his plea was the product of actual coercion stemming from the advice of his attorney and his older brother that he should plead guilty because he "faced a life sentence" if the case went to trial [111-113].

Indictments found and returned in the Superior Court Department on October 14, 1997.

Following transfer to the Suffolk County Division of the Juvenile Court Department, a motion to withdraw pleas of guilty, filed on October 26, 2006, was considered by *Paul D. Lewis*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Dennis Shedd* for the defendant.

*Helle Sachse*, Assistant District Attorney, for the Commonwealth.

Cowin, J. The defendant, Willie Furr, appeals from the denial of his motion to withdraw his plea of guilty[1] to charges arising

---

[1]Although the defendant's tender of plea form indicates that the defendant offered a "plea of delinquency" as a youthful offender, the transcript of the plea hearing states that the defendant admitted to sufficient facts to find him guilty of the charged offenses. An admission to sufficient facts is treated as a plea of guilty. See *Luk* v. *Commonwealth*, 421 Mass. 415, 418 n.6 (1995), citing *Commonwealth* v. *Duquette*, 386 Mass. 834, 841 (1982).

out of a robbery in which he participated in 1997. The defendant claims that his motion should have been allowed because the colloquy conducted during the plea hearing did not adequately ensure that his plea was made intelligently and voluntarily, and because his plea was the product of improper coercion. We affirm the denial of the defendant's motion.

*Facts and proceedings.* We summarize the facts recited by the Commonwealth and admitted by the defendant at the plea hearing. In 1997, in the parking lot of a convenience store in the Dorchester section of Boston, the fourteen year old defendant and his three teenage companions approached the victim as he was returning to his car. One of the defendant's companions pressed a sawed-off rifle to the victim's ribs and forced him into the car, while another threatened the victim with a knife. The defendant's companions took money from the victim and distributed it among themselves, including the defendant. The defendant drove the victim and his associates for a short distance and parked the car. The defendant took the victim's bank automated teller machine (ATM) card and code. The other occupants subsequently took the victim to an ATM and forced him to withdraw money from his bank account while the defendant remained with the car. When a police car approached, the defendant attempted to escape in the victim's car. During a police chase, the defendant "wrecked" the car and escaped on foot. The victim later identified the defendant from a photographic array.

The defendant was indicted as a youthful offender[2] on charges of kidnapping, armed robbery, carjacking, and assault and battery by means of a dangerous weapon.[3] The defendant and his companions were also charged with another armed robbery that

----

[2]General Laws c. 119, § 52, defines a "[y]outhful offender" as "a person who is subject to an adult or juvenile sentence for having committed, while between the ages of fourteen and seventeen, an offense against a law of the [C]ommonwealth which, if he were an adult, would be punishable by imprisonment in the [S]tate prison, and (a) has previously been committed to the department of youth services, or (b) has committed an offense which involves the infliction or threat of serious bodily harm in violation of law, or (c) has committed a violation of [G. L. c. 269, § 10 (a), (c) or (d), or G. L. c. 269, § 10E]; provided that, nothing in this clause shall allow for less than the imposition of the mandatory commitment periods provided in [G. L. c. 119, § 58]."

[3]The defendant was also charged with two counts of armed assault with

occurred two days after the ATM incident. The defendant pleaded guilty to all charges stemming from the ATM incident and the second armed robbery.[4] The plea hearing was held in 1998 before a Juvenile Court judge, with the defendant's two adult brothers in attendance.

Because it is the substance of the plea colloquy that the defendant challenges, we set forth that colloquy in detail. The judge first informed the defendant of his rights to trial by jury, to confront and cross-examine the Commonwealth's witnesses, and to testify or have other witnesses testify on his behalf. The judge also told the defendant that he had the right to testify, but that "in the event . . . you chose not to [testify] and your attorneys asked me, I would inform the jury that you have a right not to testify and your lack of testimony should not be held against you."[5] The judge stated that the maximum penalty for the charged offenses was life imprisonment, and that, "[b]y making an admission to sufficient facts . . . what you're doing is admitting that the Commonwealth [has] fact[s] sufficient against you, so that I could find you guilty of these offenses." The prosecutor next recited the facts set forth *supra.*

The defendant said that he understood the facts recited by the Commonwealth and admitted to them. The judge asked the defendant his age and level of education, and inquired whether he was under the influence of drugs or alcohol, seeing a psychiatrist, or suffering from any mental disease. The judge inquired about the presence of the defendant's brothers in court and asked whether the defendant was satisfied with the representation he had received from his lawyer. The defendant answered that he was.

---

intent to rob, unlawful possession of a firearm, and receiving a firearm with knowledge that its serial number had been defaced. The armed assault with intent to rob charges were dismissed as duplicative. Because the sawed-off rifle was later revealed to have been inoperable, the firearms charges were also dismissed. Because at the time of the offense, it "would have been reasonable to believe that [the weapon] was capable of inflicting" serious injury, the fact that the firearm was later determined to be inoperable does not affect the charge of armed robbery. See *Commonwealth* v. *Powell,* 433 Mass. 399, 401 (2001). In addition, the defendant and his companions were armed with a knife.

[4]The defendant has not challenged the adequacy of his plea with respect to the charges stemming from the second armed robbery.

[5]The judge explained other attributes of a trial as well.

The judge commented that he "was surprised at the reasonableness of the recommendation of the Commonwealth," describing the recommendation as "probably . . . too reasonable" given the seriousness of the offenses. The judge then adopted the Commonwealth's recommendation that the defendant be committed to the custody of the Department of Youth Services until age twenty-one, with a two-year concurrent commitment to a house of correction suspended until the defendant's twenty-first birthday. The judge explained the details of the sentence twice. The defendant said that he understood the terms of the sentence and agreed to them. The judge determined that the defendant's plea was both intelligent and voluntary. The defendant was given the opportunity to withdraw his plea, which he refused. The judge accepted the plea and imposed the recommended sentence.[6] The judge did not explain the elements of the charged offenses to the defendant, nor did he ask whether the defendant's attorney had done so. The judge also did not inquire whether the defendant's plea had been coerced or was the result of improper inducements.

In 1999, the defendant was arrested following a shooting incident at his high school, where he was discovered in possession of an unlicensed firearm with a defaced serial number. As a result, he was convicted as a youthful offender of unlawful possession of a firearm, receiving a firearm with a defaced serial number, attempted intimidation of a witness, and obstruction of justice. He was convicted as well of being an armed career criminal. See *Commonwealth* v. *Furr*, 58 Mass. App. Ct. 155, 157-

---

[6]At the time the defendant tendered his plea, he also signed a "child's waiver of rights" form. The defendant's attorney, one of the defendant's brothers, and the judge also signed this form. On the form, the defendant stated that he had discussed the waiver of his rights with his attorney and with his parent or guardian, and understood that he was voluntarily giving up his right to a trial and to a jury; to confrontation and cross-examination of witnesses; to present evidence in his defense; to compel the testimony of witnesses; to remain silent; to invoke his privilege against self-incrimination; and to be presumed innocent. The waiver form also indicated that the defendant was aware of the nature and elements of the offenses to which he was pleading guilty, and that he was aware of the nature and range of possible sentences for those offenses. The defendant stated in the waiver form that his plea was not the result of force, threats, or inducements (other than any agreed-upon sentence recommendation by the Commonwealth), and that he was not under the influence of drugs or alcohol.

160 (2003). See also G. L. c. 269, § 10G.[7] He was sentenced to from eight to twelve years in prison. The charges from the ATM incident to which the defendant had pleaded guilty in 1998 served as the necessary predicate offenses for the armed career criminal charge. See *Commonwealth* v. *Furr, supra* at 156-162.

In 2006, after exhausting avenues for attacking his armed career criminal conviction in the Federal and State courts, the defendant filed the present motion. Attached to the motion were affidavits from the defendant's two adult brothers, his mother, and himself. The defendant claimed in his affidavit that his "lawyer did not explain the elements of the crimes to [the defendant] and he never mentioned the joint venture theory." The defendant also stated that he "felt pressured to offer a plea" because his attorney "told [him] several times that [he] faced life in prison if the case went to trial . . . [The attorney] did not tell [the defendant] that [he] was unlikely to get a life sentence even if [he] were found guilty at a trial." The defendant averred that he received similar advice from one of his adult brothers who had attended the plea hearing. The defendant further stated he "was only 14 years old and the thought of spending life in prison scared [him]."

The motion was denied by the same judge who had accepted the plea nine years earlier. The judge did not hold a hearing or make any written findings or rulings. The Appeals Court affirmed the denial of the defendant's motion in an unpublished memorandum and order pursuant to its rule 1:28. See *Commonwealth* v. *Furr,* 72 Mass. App. Ct. 1108 (2008). We granted further appellate review. We affirm the judge's order denying the defendant's motion.

*Discussion.* The defendant contends that the plea colloquy did not adequately ensure that his plea was intelligently or voluntarily made. The defendant argues in addition that his colloquy was inadequate to ensure his plea was free from coercion because the

---

[7]General Law c. 269, § 10G (*a*), provides:

"Whoever, having been previously convicted of a violent crime or of a serious drug offense, both as defined herein, violates the provisions of [G. L. c. 269, § 10 (*a*), (*c*) or (*h*),] shall be punished by imprisonment in the state prison for not less than three years nor more than 15 years."

judge failed to inquire whether he had been threatened or induced to plead guilty. Finally, the defendant claims that his plea was the product of actual coercion stemming from the advice of his attorney and his older brother that he should plead guilty because he "faced a life sentence" if the case went to trial.[8]

A motion to withdraw a guilty plea is treated as a motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). *Commonwealth* v. *Colon*, 439 Mass. 519, 524 (2003). A judge may grant the defendant's motion "only 'if it appears that justice may not have been done.' " *Commonwealth* v. *Desrosier*, 56 Mass. App. Ct. 348, 353-354 (2002), quoting rule 30 (b). The judge may decide the motion based solely on the submitted affidavits, and the weight and credibility to be accorded those affidavits are within the judge's discretion. See *Commonwealth* v. *Pingaro*, 44 Mass. App. Ct. 41, 48 (1997). The judge need not believe such affidavits even if they are undisputed. *Id.* "The motion 'is addressed to the sound discretion of the trial judge, and . . . will not be reversed unless it is manifestly unjust, or unless the [proceeding] was infected with prejudicial constitutional error.' " *Commonwealth* v. *Colon, supra*, quoting *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995).

Due process requires that "a guilty plea should not be accepted, and if accepted must be later set aside," unless the contemporaneous record contains an affirmative showing that the defendant's plea was intelligently and voluntarily made. *Commonwealth* v. *Foster*, 368 Mass. 100, 102 (1975), citing *Boykin* v. *Alabama*, 395 U.S. 238 (1969). See *Commonwealth* v. *Fernandes*, 390 Mass. 714, 719 (1984). A judge should not accept a guilty plea "unless satisfied that the plea is voluntary and that the defendant understands the nature of the charges." *Com-*

---

[8]The defendant also argues in a footnote that the judge failed to advise him of his privilege against self-incrimination. Even if we accept this contention as adequate appellate argument, it is without merit. Although the judge did not advise the defendant of the privilege against self-incrimination as such, his statements to the defendant that "[y]ou yourself could testify [but that] in the event . . . you chose not to [testify] and your attorneys asked me, I would inform the jury that you have a right not to testify and your lack of testimony should not be held against you," served the same function. See *Commonwealth* v. *Quinones*, 414 Mass. 423, 434 (1993) ("No particular form of words need be used in the required inquiry of a defendant").

*monwealth* v. *Quinones*, 414 Mass. 423, 431 (1993). See Mass. R. Crim. P. 12, as appearing in 442 Mass. 1511 (2004). The burden is on the Commonwealth to show that the defendant's plea was intelligently and voluntarily made. See *Commonwealth* v. *Duquette*, 386 Mass. 834, 841 (1982), and cases cited.

1. *Intelligence.* The defendant claims that the Commonwealth's recitation of the facts was insufficient to ensure that he understood the nature of the offenses to which he pleaded guilty. Specifically, he claims that the colloquy did not explain adequately the intent required for a carjacking conviction[9] or the elements required for conviction of the other offenses as a joint venturer, and that as a result his plea was not intelligently made. The defendant relies upon *Henderson* v. *Morgan*, 426 U.S. 637, 646 (1976), for the proposition that the prosecutor's recitation of the facts cannot substitute for an explanation of the intent elements of the charged offenses because, although one could infer the requisite intent from the recited facts, the jury would not be required to draw such an inference. Cf. *id.* at 645-646 ("[E]ven if such a design to effect death would almost inevitably have been inferred from evidence that [the defendant] repeatedly stabbed [the victim], it is nevertheless also true that a jury would not have been required to draw that inference").

The requirement that the defendant's plea be made intelligently may be met "(1) by the judge explaining to the defendant the elements of the crime; (2) by counsel's representation that [he] has explained to the defendant the elements he admits by his plea; or (3) by the defendant's stated admission to facts recited during the colloquy which constitute the unexplained elements." *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 717 (1997). See *Henderson* v. *Morgan*, *supra* at 646-647; *Commonwealth* v. *Colantoni*, 396 Mass. 672, 679 (1986). Because the judge neither explained the intent element of carjacking or the essence of joint venture liability nor asked the defendant whether his attorney had done so, we consider whether the intent element and the joint venture concept were explained adequately by the prosecutor's recitation of the facts.

---

[9]The defendant does not claim that the Commonwealth's recitation of the facts failed to give him adequate notice of the intent elements required for conviction of the other offenses, i.e., kidnapping, assault and battery with a dangerous weapon, and armed robbery.

The defendant's argument does not persuade us. "The gravamen of a claim under *Henderson* is that the defendant was unaware of the facts he was impliedly admitting by his plea and that he did not intend to admit those facts. A showing that the defendant admitted the facts constituting the crime negates his claim, even if he is not aware that the facts he admitted are the elements of the crime." *Id.* at 680, citing *Commonwealth* v. *McGuirk,* 376 Mass. 338, 347 (1978), cert. denied, 439 U.S. 1120 (1979).

Here, the defendant admitted to facts establishing each element of the crimes with which he was charged. These admissions were adequate substitutes for the unexplained intent element needed to convict the defendant as a principal to carjacking and for the unexplained aspects of intent necessary for a joint venture as to the other charges. A defendant's intent to deprive the victim permanently of his car, which is required for a carjacking conviction, see G. L. c. 265, § 21A; *Commonwealth* v. *McGovern,* 397 Mass. 863, 868 (1986), is satisfied by a showing that a defendant is clearly indifferent as to whether the owner of the vehicle ever recovered possession. See *Commonwealth* v. *Salerno,* 356 Mass. 642, 648 (1970). By admitting to the fact that he abandoned the car after crashing it in an attempt to flee from the police, the defendant was admitting that he was indifferent to the car owner's recovery of the car and therefore that he had the necessary intent.

Likewise, the defendant admitted to facts that clearly showed that he was present at the scene of the crime, either intended or knew that his associates intended to commit a crime, and was willing and available to help, all of which are necessary for his conviction as a joint venturer on the other charges. See *Commonwealth* v. *Longo,* 402 Mass. 482, 486 (1988), quoting *Commonwealth* v. *Bianco,* 388 Mass. 358, 366 (1983) ("The test [for joint venture] is whether each defendant was [1] present at the scene of the crime, [2] with knowledge that another intends to commit the crime or with intent to commit a crime, and [3] by agreement is willing and available to help the other if necessary"). The defendant accosted the victim together with his armed companions and was an active participant in the robbery. The defendant was the one who took the victim's ATM card and drove the victim's car while his associates threatened the victim

with a rifle and a knife. The defendant also fled when the police arrived. The defendant's admission to these facts established that he was not merely a passive onlooker but a willing participant in the kidnapping, armed carjacking, armed robbery and assault of the victim. See *Commonwealth* v. *Miranda*, 441 Mass. 783, 791-792 (2004); *Commonwealth* v. *Soares*, 377 Mass. 461, 472 (1979); *Commonwealth* v. *Brannon B.*, 66 Mass. App. Ct. 97, 100 (2006).

There is other evidence apparent from the record before the judge that indicates that the defendant understood the nature of the charges to which he pleaded. The defendant signed a waiver of rights form that stated expressly that he was "aware of the nature and elements of the charge or charges" to which he pleaded. See note 6, *supra*. Although the form alone may not substitute for a proper colloquy, the defendant's signed waiver may properly be considered as part of the plea record to support a finding that the plea was made intelligently. See *Commonwealth* v. *Colon*, 439 Mass. 519, 529 n.14 (2003).

By contrast, the defendant has presented no evidence, other than the statements contained in his affidavit, in support of his claim that he did not understand the nature of the charges against him. The judge was entitled to disbelieve the defendant's claim that he did not understand the charges to which he pleaded. See *Commonwealth* v. *Huot*, 380 Mass. 403, 409-410 (1980); *Commonwealth* v. *McGuirk*, *supra* at 346. Although the judge did not make subsidiary findings explicitly refusing to credit the affidavit, we may reasonably assume from his denial of the defendant's motion that he did so. See *Commonwealth* v. *Lanoue*, 392 Mass. 583, 588 (1984). There was ample evidence for the judge's skepticism. At the time of the plea, the defendant was not a novice in the criminal justice system.[10] In addition, the defendant waited eight years to challenge the adequacy of his plea colloquy and did so only after the charges to which he pleaded guilty operated as predicate offenses for his later conviction as an armed career criminal. Moreover, the defendant has not similarly chal-

___

[10]Prior to pleading guilty, the defendant had been arraigned in the Juvenile Court on ten different occasions for multiple offenses ranging from trespassing and vandalism to robbery and firearms violations. For some of these offenses, such as trespassing and disorderly conduct, the defendant was adjudicated delinquent and committed to the custody of the Department of Youth Services.

lenged his plea during the same colloquy to other charges that did not serve as predicate offenses for his later armed career criminal conviction. See note 4, *supra*. In these circumstances, the contemporaneous record adequately demonstrates that the defendant's plea was intelligently made.

2. *Voluntariness.* The defendant claims also that the plea colloquy failed to establish the voluntariness of his plea because of the judge's failure to inquire whether the plea was made in response to threats or improper inducements. "The question whether a defendant was subject to undue pressure to plead guilty must be considered in some manner on the record," but "[n]o particular form of words need be used in the required inquiry of a defendant" (citations omitted), and the issue need not be raised directly. *Commonwealth* v. *Quinones*, 414 Mass. 423, 434 (1993). The judge in this case should have inquired specifically whether the defendant's plea was the result of threats, coercion, or improper inducements. See *Commonwealth* v. *Foster*, 368 Mass. 100, 107 (1975). Although the judge failed to do so, we conclude that this defect does not require that the defendant be allowed to withdraw his plea.

The plea colloquy in this case did not raise the issue of voluntariness directly, but the judge did consider the issue; it "was not investigated in a perfunctory fashion." *Commonwealth* v. *Quinones*, *supra* at 435. The judge adequately informed the defendant of the trial rights he was waiving and ensured that the defendant was not presently under the influence of drugs or alcohol, seeing a psychiatrist, or suffering from any mental illness or disease. The judge also informed the defendant of the maximum possible sentence he faced were the case to proceed to trial, i.e., life imprisonment, and the defendant stated that he understood. The terms of the Commonwealth's sentence recommendation, which were highly favorable given the seriousness of the charged offenses, were explained to the defendant twice and he agreed to them. The judge asked whether the defendant was satisfied with the representation he had received from his attorney and the defendant answered in the affirmative. The judge noted the presence of the defendant's brothers and he gave the defendant an opportunity to withdraw his plea at the end of the colloquy, which the defendant refused. As in *Quinones*, it is apparent from

the record here that the defendant had "numerous opportunities to tell the judge . . . that he was under improper pressure erroneously to agree to the facts of his crimes." *Id.* at 435.

The defendant's signed waiver of rights form further demonstrates the voluntariness of his plea. The defendant stated in that document that his "plea . . . or admission is not the result of force or threats," that "[i]t is not the result of assurances or promises, other than any agreed-upon recommendation by the prosecution," and that the defendant "decided to plead . . . or to admit to sufficient facts, voluntarily and freely." Although, as we have indicated, the use of a written waiver form alone is not a substitute for an adequate plea colloquy, the defendant's signature on such a form "is one of several facts that 'bespeak the defendant's intention to consummate the plea bargain.' " See *Commonwealth* v. *Colon*, 447 Mass. 519, 529 n.14 (2003), quoting *Commonwealth* v. *Grant*, 426 Mass. 667, 672 (1998). The contemporaneous record thus adequately supports the judge's conclusion that the defendant's plea was voluntary. See *Commonwealth* v. *Foster*, *supra.*

Finally, the defendant claims that he must be allowed to withdraw his plea because it was the product of actual coercion. Although the defendant's brief is not entirely clear on this point, we understand his claim to be the following. The defendant maintains that he felt pressured to plead to the charged offenses because he was told by his attorney and one of his adult brothers that, if the case proceeded to trial, the defendant would face a life sentence. The defendant argues that this advice was misleading because he was not advised that, given his young age and his prior record, a life sentence was highly unlikely. Thus, the defendant contends, his plea was the product of coercion and he should be entitled to withdraw it.

The defendant has failed to demonstrate that his plea was in fact the product of improper coercion. As discussed previously, the defendant's only evidence to support his claim is contained in the affidavits from the defendant and one of his brothers, both made more than eight years after the events at issue and only after the defendant had failed to challenge successfully his subsequent armed career criminal conviction. The defendant provided no affidavit from his attorney at the plea colloquy to corroborate

his claim that the attorney had pressured him into pleading guilty by emphasizing the risk of an unlikely life sentence. Moreover, the alleged prediction of a life sentence is inconsistent with the averment of the defendant's brother in his affidavit. According to that affidavit, the attorney advised the defendant to plead guilty because "if the case went to trial, [the defendant] could be sentenced to life in prison." Given the offenses with which the defendant was charged, the statement that the defendant "could be sentenced to life in prison" was accurate because a life sentence was a possible, albeit unlikely, outcome. Regardless, such a statement, even if believed, is far short of a prediction that the defendant would likely receive a life sentence, and does not rise to the level of improper coercion. See *Huot* v. *Commonwealth*, 363 Mass. 91, 98 (1973); *Commonwealth* v. *Hiskin*, 68 Mass. App. Ct. 633, 641 (2007). In any event, the judge was not required to credit either version. See *Commonwealth* v. *McGuirk*, 376 Mass. 338, 346 (1978); *Commonwealth* v. *Pingaro*, 44 Mass. App. Ct. 41, 48 (1997).

Other evidence contained in the plea record assists in establishing that the defendant's plea was voluntary and did not result from actual coercion. First, the highly generous sentence recommendation that the defendant received in light of the offenses with which he was charged strongly supports the conclusion that the defendant chose voluntarily to plead to those offenses. See *Commonwealth* v. *DeCologero*, 49 Mass. App. Ct. 93, 94 (2000). Second, as mentioned, the defendant had significant prior experience with the juvenile criminal justice system, including previous charges of unarmed robbery. See note 10, *supra*. The judge could consider the defendant's prior record to support the conclusion that his plea was likely to have been voluntarily made. See *Commonwealth* v. *Williams*, 71 Mass. App. Ct. 348, 360 (2008). Finally, the defendant's signed waiver of rights form, which stated that his "plea . . . or admission is not the result of force or threats," further supports the conclusion that there was no actual coercion. See *Commonwealth* v. *Colon*, 439 Mass. 519, 529 n.14 (2003). "Nothing in the plea colloquy . . . detracts from the conclusion that the defendant's guilty plea

was voluntary and the product of deliberate and rational decision making." *Commonwealth* v. *Hiskin, supra.*

*Order denying motion for new trial affirmed.*