## COMMONWEALTH *vs.* JOHN E. NIKAS, JR.

Middlesex. March 6, 2000. - May 11, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, & SPINA, JJ.

*Practice, Criminal,* Plea, Postconviction relief, New trial. *Constitutional Law,* Plea. *Due Process of Law,* Plea. *Homicide.*

A Superior Court judge correctly allowed a criminal defendant's motion for a new trial based on defects in his plea colloquy, where the record of the plea proceeding showed that the defendant did not understand the elements of the different degrees of murder when he offered an *Alford* plea (*North Carolina* v. *Alford*, 400 U.S. 25 [1970]), of guilty of murder in the second degree on an indictment charging murder in the first degree, and that the judge's explanation of the differences was incorrect: the plea was not intelligently made. [455-460]

INDICTMENT found and returned in the Superior Court Department on February 3, 1983.

A guilty plea was accepted by *Hiller B. Zobel,* J., and a motion for a new trial, filed on October 17, 1996, was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Douglas E. Zemel,* Assistant District Attorney, for the Commonwealth.

*Edward B. Gaffney* for the defendant.

ABRAMS, J. On June 24, 1983, the defendant, John E. Nikas, Jr., pleaded guilty to carrying a firearm without a license and murder in the second degree.[1] After a colloquy that is the subject of this appeal, the judge accepted the defendant's guilty pleas. The judge sentenced the defendant to from three to five years for the firearm violation, to run concurrently with a life sentence for the murder.

In October, 1996, the defendant filed a motion for a new trial, alleging defects in the plea colloquy. A hearing was held on the

---

[1] The defendant does not request a new trial on the firearm conviction.

defendant's motion in December, 1998,[2] and the judge who accepted the defendant's guilty pleas vacated the defendant's conviction of murder. The judge determined that the defendant's plea was not knowing and voluntary because the defendant had not been informed sufficiently on the elements of murder in the first degree. The Commonwealth appealed, and the Appeals Court affirmed the judge's decision. See *Commonwealth* v. *Nikas*, 48 Mass. App. Ct. 1102 (1999). We granted the Commonwealth's request for further appellate review. See G. L. c. 211A, § 11. We affirm the decision allowing the defendant's motion for a new trial.

1. *Facts.* The defendant was convicted of the January 2, 1983, murder of Michael Povio. The defendant, the victim, and another friend had all been drinking and using drugs that night. The three drove around Cambridge until the defendant, who was driving, pulled the car over so that one of the three could relieve himself.

The Commonwealth offered to prove the following additional facts. While the vehicle was stopped, the victim accused the defendant of taking some of his Valium tablets. The victim and the defendant argued. The defendant pulled a .22 caliber shotgun from the car and shot the victim once in the head. After a pause, the defendant shot the victim a second time in the head.

At the plea colloquy, the defendant maintained that he had not acted intentionally. According to the defendant, the victim and the third person in the car began to fight, and one of the two of them pulled a gun. The defendant claimed that he entered the fray to help. The defendant told the judge that "[i]t was an accident" and "the gun went off while three of us were in a struggle."

The Commonwealth charged the defendant with murder in the first degree by reason of premeditation and proposed to bring forward two witnesses who would identify the defendant

---

[2]The gap in time between the filing of the motion and the hearing occurred because of various procedural and pragmatic concerns. The defendant's initial motion was unaccompanied by a memorandum of law. The judge required the defendant to file a memorandum in support of the motion by January 21, 1997. The defendant filed the memorandum, but later discovered that his attorney was seriously ill. The defendant obtained new counsel, who filed a supplemental memorandum in support of the motion in October, 1998.

as the perpetrator.[3] Because of the strength of the Commonwealth's evidence, the defendant decided to plead guilty to murder in the second degree rather than risk prosecution for murder in the first degree.

2. Alford *pleas.* There are two "constitutionally permissible ways" to establish a defendant's guilt without a trial. See *Commonwealth* v. *McGuirk,* 376 Mass. 338, 343 (1978), cert. denied, 439 U.S. 1120 (1999). A defendant may admit his "guilt in open court." *Id.* See, e.g., *Commonwealth* v. *Robbins, ante* 442 (2000). Or, as was the case here, a defendant may make a "plea of guilty accompanied by a claim of innocence in accordance with the standards of *North Carolina* v. *Alford,* 400 U.S. 25 (1970)." *Commonwealth* v. *McGuirk, supra.*

Under *North Carolina* v. *Alford,* 400 U.S. 25 (1970), a defendant need not admit his guilt to make a valid guilty plea. "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37. See *Huot* v. *Commonwealth,* 363 Mass. 91, 95 n.4 (1973), quoting *North Carolina* v. *Alford, supra.* Typically, a defendant makes an *Alford* plea to a lesser charge, or for the purpose of obtaining a lesser sentence, when the State's evidence is strong. See, e.g., *North Carolina* v. *Alford, supra*; *Huot* v. *Commonwealth, supra.*

The Commonwealth's case for a conviction of murder in the first degree by reason of premeditation was strong. The Commonwealth planned to present an eyewitness to the shooting who would testify that the defendant shot the victim twice, the second time after a pause of several seconds. The Commonwealth also planned to present a witness who placed the defendant at the murder scene immediately after the murder. Finally, the Commonwealth had evidence that the defendant had falsely asserted an alibi for the night of the murder, thus evincing his consciousness of guilt. According to the defendant's comments during the plea colloquy, he decided to plead guilty to murder in the second degree because, as his attorney had explained to him, the Commonwealth's evidence that he committed premeditated murder was strong.

3. *Discussion.* The judge granted the defendant's postsen-

---

[3]The Commonwealth also planned to put on evidence of the defendant's consciousness of guilt. The defendant, at first, had lied about his whereabouts on the evening of the murder.

tence motion for a new trial because the judge determined that the defendant's plea was not knowing or intelligent. In his memorandum and order, the judge wrote that, "although, under the circumstances[,] the explanation of second degree murder was adequate (albeit barely so), the Court seriously misstated the elements of first-degree murder."[4] The Commonwealth argues that the defendant understood the charges against him because, according to the Commonwealth, the record shows that (1) persons other than the judge explained the elements of murder to the defendant; (2) the defendant understood the difference between the degrees of murder; and (3) the case against the defendant was strong. We disagree with the first two of these assertions, and we observe that the third is a necessary, but not sufficient, showing to support an *Alford* plea.

A postsentence motion to withdraw a guilty plea, which we treat as a motion for a new trial pursuant to Mass. R. Crim. P. 30, 378 Mass. 900 (1979), should be granted "only 'if it appears that justice may not have been done.' " *Commonwealth* v. *Fanelli*, 412 Mass. 497, 504 (1992), quoting *Commonwealth* v. *DeMarco*, 387 Mass. 481, 482 (1982), and cases cited. "By focusing on possible injustice, rule 30 (b) is different from Mass. R. Crim. P. 12 (c) (2) (B), which provides judges with broad discretion to allow a defendant to withdraw his plea before the plea has been accepted and sentence imposed." *Commonwealth* v. *DeMarco*, *supra* at 484. "Judges are to 'apply the standard set out in Mass. R. Crim. P. 30 (b) rigorously,' *id.* at 487, and should 'only grant a postsentence motion to withdraw a plea if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth.' [Footnote omitted.] *Id.* at 486. *Commonwealth* v. *Hason*, 27 Mass. App. Ct. 840, 844-845 (1989)." *Commonwealth* v. *Fanelli*, *supra* at 504.

Justice is not done, and a new trial is therefore warranted, where a defendant pleads guilty without an understanding of the proceedings: "as a matter of constitutional due process, a guilty plea . . . must later be set aside, unless the record shows affirmatively that the defendant entered the plea freely and understandingly." *Commonwealth* v. *Foster*, 368 Mass. 100, 102 (1975), discussing *Boykin* v. *Alabama*, 395 U.S. 238 (1969). A defendant's plea is not entered into "freely and understand-

---

[4]As we discuss, *infra* at 457, the explanation of murder in the second degree also was incorrect.

ingly" unless he comprehends the nature of the crime to which he is pleading guilty. See *Commonwealth* v. *McGuirk, supra* at 342, discussing *Henderson* v. *Morgan*, 426 U.S. 637 (1976) ("[I]f the defendant is ignorant of a critical element of an offense, his plea of guilty to that offense cannot serve as an intelligent admission of guilt").

Where the defendant makes an *Alford* plea, the record must also support the conclusion that the defendant understood the nature of the crime of which he was accused. *North Carolina* v. *Alford, supra* at 28-29. Thus, the United States Supreme Court held that a defendant's plea was made knowingly and voluntarily only after noting that defense counsel had explained to the defendant both the crime with which the defendant was charged (murder in the first degree) and the crime to which the defendant pleaded guilty (murder in the second degree). *Id.*

Here, the defendant pleaded guilty to murder in the second degree in order to avoid the possibility of being sentenced to life in prison without possibility of parole if convicted of murder in the first degree. The Commonwealth asserts, correctly, that it does not matter whether a defendant acquires an understanding of the elements of the relevant crime or crimes from the judge, from his attorney, or in some other way. All that is necessary is that the record show that, by some means, the defendant possessed enough comprehension to plead "freely and understandingly." *Commonwealth* v. *Foster, supra,* discussing *Boykin* v. *Alabama, supra.*

The Commonwealth does not dispute that the judge's explanation of the difference between murder in the first degree and murder in the second degree was incorrect.[5] The judge told the defendant that the elements of second degree murder are an unlawful killing and an "intent to inflict serious injury."[6] The judge then explained that, for "[f]irst degree murder, they have

---

[5]The Commonwealth argues, without citation to authority, that, because the defendant's motion for a new trial was grounded on the judge's incorrect explanation of murder in the second degree, the defendant waived the claim that the judge's explanation of murder in the first degree was incorrect. We reject this argument. The incorrect explanation involved the distinction between the degrees of murder and, therefore, necessarily involved the judge's comments on both murder in the first degree and murder in the second degree.

[6]In fact, the malice element of second degree murder includes: "(1) an intent to cause death . . . (2) an intent to cause *grievous bodily harm* . . . [or] (3) an intent to do an act, which, in the circumstances known to the defendant, a reasonable person would have known would create a plain and

to prove all of that plus they have to prove that you not only intended to injure, but you intended to kill." The judge did not mention "premeditation" or "deliberation."[7]

The Commonwealth, however, argues that the record shows that the defendant's counsel explained the relevant law to the defendant before the plea colloquy. Even if we assume, arguendo, that the judge's subsequent incorrect explanation would not have vitiated any understanding the defendant had gained from his counsel, we disagree with the Commonwealth's reading of the record.

During the plea colloquy, the defendant said that he was pleading guilty because his counsel told him that he did not "stand a chance in hell" if he went to trial. In order to clarify the record, defense counsel explained to the judge that he had access to the police reports, grand jury testimony, photographs, and other relevant evidence in the case. Defense counsel said that "[a]ll of that information was given to [the defendant] and . . . he indicated that he read it and he understood it and he is aware of what the Commonwealth's case is against him." Counsel then explained that he did not quantify the odds "on success or failure with respect to the case."

Unlike in *Commonwealth* v. *Robbins, supra* at 450-451, here, defense counsel never stated that he had reviewed the relevant *law* with the defendant. The record supports only the conclusion that defense counsel discussed the Commonwealth's *evidence* with his client. Contrast *Commonwealth* v. *Robbins, supra* at 451 (defense counsel stated that he had reviewed, at length, proposed jury instructions explaining elements of crime with which defendant was charged). Therefore, the defense attorney's statement does not suffice to establish that the defendant understood the elements of the relevant crimes.

The Commonwealth also notes that the prosecutor, in his recitation of the Commonwealth's evidence, concluded that the timing of the two gun shots could raise "an inference of deliberation[] and premeditation." This statement, in the midst

---

strong likelihood that death will result." Model Jury Instructions on Homicide (1999).

[7]The judge noted that the Commonwealth did not "have to prove that [the defendant] sat down and plotted it out for any length of time previously." This statement as to what the Commonwealth need not prove was insufficient to inform the defendant that the Commonwealth would be required to prove deliberate premeditation to obtain a conviction of murder in the first degree.

of nine pages of narrative transcript describing the Commonwealth's evidence, is insufficient to support the conclusion that the defendant understood that the Commonwealth would have to prove beyond a reasonable doubt that he had premeditated the murder of the victim.

The Commonwealth calls our attention to the defendant's statement, during the colloquy, that one commits murder in the first degree when one "plans to do something and commits it." According to the Commonwealth, this statement evinces the defendant's understanding of premeditation.

The defendant's statement is incomplete. To prove premeditation, the Commonwealth would have had to prove that "the defendant decided *to kill* after deliberation" (emphasis added). Model Jury Instructions for Use in Superior Court (1999). We are not persuaded that the record supports the conclusion that the defendant understood the nature of the intent required.

Furthermore, the defendant made his statement in response to being asked whether he had any questions for the judge. The defendant said: "I don't really understand the law too much, as far as first degree murder, second degree murder, only that first degree murder [means] that someone, I guess, basically plans to do something and commits it." It was in answer to the defendant's implicit question that the judge gave his incorrect explanation of the distinction between the degrees of murder. Therefore, even if the defendant had some understanding of premeditation before the judge's explanation, we cannot be confident that his understanding remained after the explanation.

The Commonwealth also asserts that, because the evidence against the defendant was strong, the record supports the conclusion that the defendant's plea was intelligent. The Commonwealth's argument misapprehends the significance of the fact that the evidence against the defendant was strong. This fact supports the conclusion that the defendant understood the nature of making an *Alford* plea, that he understood that he would likely be convicted of murder in the first degree and sentenced to life in prison without parole if he went to trial. The strength of the evidence against the defendant, however, does not support the conclusion that the defendant understood "the nature of the charges" against him. *Commonwealth* v. *Quinones*, 414 Mass. 423, 436 (1993).

4. *Conclusion.* The record supports the judge's determination that the defendant was not sufficiently informed of the elements

of the crime with which he was charged.[8] Because "justice may not have been done," we affirm the judge's decision vacating the conviction of murder in the second degree. *Commonwealth v. Fanelli,* 412 Mass. 497, 504 (1992), quoting *Commonwealth v. DeMarco,* 387 Mass. 481, 482 (1982). "Upon the vacation of the judgment[], the defendant will face the possibility of the Commonwealth's moving for retrial on the indictments. We note that retrial might result in severer sentences than those imposed on the guilty pleas." *Commonwealth v. Foster,* 368 Mass. 100, 108 & n.6 (1975).

The order allowing the defendant to withdraw his plea and for a new trial is affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[8]Because this ground suffices to support the vacation of the defendant's conviction, we do not reach the defendant's other argument that his plea was not voluntary because the judge failed to ask specific questions as to his understanding of the privilege against self-incrimination.