COMMONWEALTH vs. GRABIEL COLON.[1]

Hampden. March 6, 2003. - June 6, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal*, New trial, Plea. *Constitutional Law*, Plea.

A defendant disputing the validity of his plea of guilty to certain criminal
charges was entitled to a new trial, where the defendant submitted suf-
ficient credible and reliable evidence to rebut the presumption that the
prior conviction was valid, in that the plea judge had failed to ascertain
whether the defendant's plea was given knowingly and voluntarily; and
where the Commonwealth had failed to meet its burden to show that the
defendant's plea proceedings were conducted in a way that protected the
defendant's constitutional rights. [524-530]

COMPLAINT received and sworn to in the Holyoke Division of
the District Court Department on January 12, 1994.

A motion to withdraw pleas of guilty, filed on March 7, 2000,
was heard by *Nancy Dusek-Gomes*, J., and a motion for a new
trial was heard by her.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Benjamin H. Keehn,* Committee for Public Counsel Services,
for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the
Commonwealth.

IRELAND, J. After he was indicted in 1999, on two firearm
charges that carried enhanced sentences for repeat offenders, see
G. L. c. 269, § 10G (*c*), the defendant moved to withdraw guilty
pleas entered in the Holyoke Division of the District Court
Department in 1994 and 1996. A judge other than the plea
judge ruled on the defendant's motions. She allowed the
defendant's motion on the 1996 plea, but denied the motion on

---

[1]We spell the defendant's name as it appears on the complaint. See *Com-
monwealth* v. *Rodriquez*, 418 Mass. 1, 1 n.1 (1994).

the 1994 plea. The defendant appealed and the Appeals Court affirmed. *Commonwealth* v. *Colon,* 55 Mass. App. Ct. 903 (2002). We granted the defendant's application for further appellate review. Because we conclude that the plea procedure was defective, we reverse the defendant's conviction and remand this case to the District Court for further proceedings consistent with this opinion.

I. *Background.*

Represented by counsel, the defendant pleaded guilty in the Holyoke District Court in 1994, and 1996, to various crimes and was sentenced on his pleas.[2] In 1999, the defendant was indicted in Superior Court on firearm charges. G. L. c. 269, §§ 10 (*a*) and (*h*), 10G (*c*). Two of the crimes for which the defendant was indicted in 1999 have a mandatory minimum sentence of fifteen years in the State prison for repeat offenders. G. L. c. 269, § 10G (*c*). After the defendant was indicted, he sought to vacate the convictions entered pursuant to his guilty pleas in 1994 and 1996, and moved for new trials in those cases. His motions allege that the plea judge, who was the same in each case, gave a constitutionally inadequate plea colloquy.

The defendant submitted the tape recording of the 1996 plea hearing, which revealed various deficiencies in that colloquy, discussed *infra.* The tape recording of the 1994 plea hearing was no longer available,[3] and the defendant's challenge to its adequacy was premised on the inadequacies of the plea judge's customary plea practice. In support of the motion, defense

[2]On February 2, 1994, the defendant pleaded guilty to a charge of assault and battery, assault by means of a dangerous weapon, and two counts of threatening to commit a crime. He received a suspended one-year sentence to a house of correction for assault and battery, a concurrent sentence for assault by means of a dangerous weapon, and the two counts of threatening to commit a crime were placed on file. The defendant's motion for a new trial does not specify which convictions he seeks to vacate. Because the record does not indicate that the defendant consented to placing the two convictions on file, we may consider them. See *Commonwealth* v. *Paniaqua,* 413 Mass. 796, 797 n.1 (1992). We presume that the defendant is seeking to vacate all convictions stemming from the 1994 plea.

On November 6, 1996, the defendant pleaded guilty to, among other things, a charge of possession of a firearm, for which it appears that he received a two and one-half year sentence to a house of correction.

[3]See Rule 211 (A) (4) of the Special Rules of the District Courts which requires that tape recordings be preserved for at least two and one-half years.

counsel submitted an affidavit that: (1) the same judge accepted the defendant's guilty pleas in 1994 and 1996; (2) in the defendant's 1996 plea proceeding, the judge failed to inquire as to the defendant's understanding of the charges against him, the maximum penalties, elements of the charges, or whether the defendant admitted that the facts were true, and did not advise the defendant that he was waiving his rights to a jury trial, to confront his accusers, or his privilege against self-incrimination; (3) attorneys who regularly practiced before the plea judge indicated that they "never heard [him give] a full colloquy"; and (4) one such attorney recited the judge's regular inadequate colloquy, and it was consistent with the 1996 recorded inadequate colloquy.

In response to the defendant's motions, the Commonwealth submitted two affidavits. An assistant clerk-magistrate at the Holyoke District Court averred that he had "participated in approximately 10,000 plea colloquies performed by" the plea judge and that in his "experienced opinion," the judge's "regular practice is to give a full and complete plea colloquy." Additionally, an attorney who "handled numerous criminal matters" in the court, averred that he "cannot recall any [matter] in which [the plea judge] did not conduct a thorough colloquy to determine if my client's plea or submission was knowing, willing and intelligent."

The defendant then filed a motion to recuse the plea judge from the motion to withdraw his 1994 guilty plea. In support of this motion, defense counsel submitted an affidavit, which in addition to reiterating information contained in her first affidavit, stated that she had obtained six randomly selected recordings of guilty pleas taken by the plea judge during 1996 and 1997 (the earliest years for which tapes were available); she attended three plea colloquies given by the plea judge in April, 2000; and none of the plea colloquies on the six randomly selected tapes, the defendant's 1996 tape-recorded plea, or the three hearings she heard, was constitutionally adequate.

The plea judge granted the defendant's motion to recuse, and both the 1994 and the 1996 cases were transferred to a different

judge in the Holyoke District Court.[4] At the hearing on the defendant's motions, defense counsel represented that the defendant did not have a specific recollection as to what happened at the 1994 plea proceeding. The defendant had, however, signed a form indicating that he was waiving his right to be tried by a jury.[5] Defense counsel submitted the tape recording of the 1996 plea and the six tape recordings of randomly selected plea colloquies. She explained that it was an assistant clerk-magistrate who had randomly selected those tapes. In addition, defense counsel testified as to her observations during three plea colloquies in April, 2000, before the plea judge. Two attorneys who regularly practiced before the plea judge, testified to his routine practice for plea colloquies from 1994 to the present. All three attorneys testified that the judge adheres to substantially the same pattern: (1) he informs the defendant that the defendant's attorney has negotiated a plea with the prosecutor, and that the defendant has the right to withdraw the plea and have a trial by a judge or jury if the judge exceeds the recommended sentence; (2) he informs the defendant that he could be deported as a result of the conviction if he is not a United States citizen; (3) he asks the prosecution to read the facts; and (4) he asks if defense counsel has anything to add or wishes to be heard. There is virtually no dialogue between the judge and the defendant. This pattern is consistent with transcripts from the seven tape-recorded colloquies.[6]

The hearing was continued to the following week, when the

---

[4]In situations like this, when a judge is asked to rule on the adequacy of a colleague's customary plea colloquy, the better practice is to transfer the case to a judge in a different court or county.

[5]The defendant signed his name under a statement that, "I, the above-named defendant, have been informed of my right to be tried by a jury. I understand that right. I have decided to waive that right. I have chosen to plead guilty or admit to a finding of guilty." The form included a certification by defense counsel that she had explained the waiver of the right to a jury trial.

[6]There were slight variations in some of the seven tape-recorded colloquies. In one, before the prosecutor summarized the evidence, the plea judge asked the defendant, "You're admitting these facts, is that correct?" However, after the facts were presented by the prosecutor, the judge did not ask the defendant if he admitted the facts as they were presented, nor did he ask about the defendant's mental condition, even though defense counsel said the defendant was schizophrenic and received medication twice a month. In another col-

Commonwealth called Thomas Kokonowski, a prosecutor during 1993 and 1994, who participated in many pleas before the judge, including the defendant's 1994 plea. Although Kokonowski had no specific memory of the defendant's plea, he testified to the specific questions that he recalled the plea judge routinely asked during plea colloquies.[7] In addition, the Commonwealth submitted an affidavit from the plea judge regarding his regular plea colloquy practice. The affidavit listed approximately fourteen questions pertaining to the defendant's age, education, understanding of the proceedings, understanding of the rights being waived, satisfaction with counsel, and absence of force.[8] The Commonwealth also referenced the previously submitted affidavits.

loquy the judge asked defense counsel if his client was "knowingly pleading to distribution." In a third colloquy the judge asked the defendant, "Do you understand at this time you are now relinquishing your right to a trial by a jury?", and later said, "You are giving up your constitutional right to confront the witness. Do you understand that?"

[7]Kokonowski testified that the plea judge routinely asked whether "the defendant understood he or she had the right to trial either by judge or by jury," and "that they were giving [that right] up if the plea was accepted"; whether they understood their right against self-incrimination, and that "they were giving that up"; "whether or not the person was under the influence of drugs or alcohol"; "whether the defendant knew what the Commonwealth had to prove beyond a reasonable doubt in order to be convicted of the crimes"; whether the defendant had been advised of his deportation or denial of naturalization rights; whether the "attorney was advising [the defendant] of his rights before [the judge] spoke to [the defendant]"; and, after the facts had been read by the prosecutor, "something to the effect of argument [*sic*] of those facts or are those facts true."

[8]The plea judge's affidavit stated that his customary plea colloquy as of 1994 included the following questions:

"How old are you? How far did you [go] in school? Depending on schooling: Are you employed[?] In what capacity[?]

"Do you understand the nature of these proceedings?

"Do you understand that when you enter a plea you forgo the right to have a trial by a judge or a jury?

"Do you understand that a jury is made up of members of the community and you have the right to remove anyone from the panel for cause (reason) and you may remove at least two more jurors without any reason? That is significant because a verdict of guilty or not guilty requires a unanimous vote and anything less [than] that would require a new trial or some other disposition.

"Are you satisfied with your lawyer? Do you believe he is acting in your

The motion judge granted the motion for a new trial with respect to the 1996 plea, but denied the motion with respect to the 1994 plea. The motion judge's findings and order for the 1994 plea acknowledged that the seven tape-recorded plea colloquies were deficient. She concluded, however, that "the defendant did not meet his initial burden to establish that the presumptively proper guilty plea proceedings were constitutionally defective."

## II. *Discussion.*

"A motion for new trial is the appropriate device for attacking the validity of a guilty plea." *Commonwealth* v. *Huot*, 380 Mass. 403, 406 (1980), citing *Commonwealth* v. *Penrose*, 363 Mass. 677, 681 (1973). The motion "is addressed to the sound discretion of the trial judge, and . . . will not be reversed unless it is manifestly unjust, or unless the [proceeding] was infected with prejudicial constitutional error." *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995), citing *Commonwealth* v. *Sullivan*, 385 Mass. 497, 503 (1982). Because we conclude that the judgment entered by the motion judge is both infected with prejudicial constitutional error, and is manifestly unjust, we reverse the denial of the motion for a new trial.

"[T]he standards that should govern a judge's consideration of a defendant's motion to withdraw a guilty plea under Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979), when the motion is filed in a sentencing enhancement context and no record of the plea exists because the means of creating that record have been destroyed pursuant to court rule" are set forth in *Commonwealth* v. *Lopez*, 426 Mass. 657, 658 (1998). In such circumstances, "if [a] challenge is to advance at all, [it] must be accompanied by sufficient credible and reliable evidence to rebut a presumption

---

best interest?

"Do you understand you are forgoing the right to challenge your accusers?

"Do you understand that you are giving up your right to remain silent[?]No one is forcing you to do this[?]

"We will now hear a summary of the evidence that the Commonwealth will present.

"Counsel do you or your client have any questions as to the facts?

"Counsel do you wish to be heard on disposition?

"Do you understand that if you are not a citizen and you are convicted and

that the prior conviction was valid. If a defendant meets this burden, then an evidentiary hearing may be warranted at which the burden" shifts to the Commonwealth. *Id.* at 665.

In concluding that the defendant did not meet his initial burden, the motion judge did not specifically decide whether the defendant presented "sufficient credible and reliable evidence to rebut [the] presumption" of the plea's validity, *id.*, other than to conclude that the plea judge's affidavit "far outweigh[ed]" the defendant's evidence. In addition, the motion judge evidently misunderstood the purpose of the tape-recorded pleas, which were submitted to reconstruct the record by establishing the plea judge's customary plea practice.[9] See *Commonwealth* v. *Quinones*, 414 Mass. 423, 432 (1993) ("no impropriety . . . in relying on a judge's customary practice in taking guilty pleas to reconstruct the record"). The record does not support the motion judge's conclusion that the defendant did not meet his initial burden.

We summarize the considerable evidence the defendant offered to rebut the presumption of regularity. First, he presented recordings from six *randomly* selected colloquies given during 1996 and 1997. It is significant that the tape-recorded pleas were randomly chosen by an assistant clerk-magistrate, and defense counsel had no prior knowledge of the content of any of the plea colloquies. Moreover, the defendant submitted all the tape recordings that he received from the clerk's office, every one of which contained a woefully deficient colloquy. Second, the defendant submitted the tape recording from his 1996 plea hearing, which followed substantially the same pattern, with the same inadequacies as the randomly selected colloquies. Third, defense counsel's affidavit indicated that she had spoken with numerous attorneys, one of whose description of the judge's routine plea colloquy was consistent with the recorded colloquies. Although the affidavit did not provide names, the defendant later subpoenaed two attorneys for the hearing, both of whom testified specifically as to the substance of the plea judge's regular practice, which was consistent with the

found guilty you may be deported or denied naturalization?"

[9]The motion judge erroneously concluded that the defendant was using the recordings to argue "seven of hundreds of plea colloquies in 1996 and 1997 were deficient, therefore this 1994 plea colloquy must have been deficient."

tape recordings. Significantly, both testified that the judge's plea practice had not substantially changed over the years.[10] Fourth, defense counsel averred that in 2000 she attended three plea proceedings that were still inadequate. Although she did not detail the content of the colloquies in her affidavit, she testified to the plea judge's colloquies, and her statements were consistent with the tape recordings and the testimony of the two attorneys.

The defendant's evidence is overwhelming that over many years the plea judge followed substantially the same pattern. Moreover, the pattern he followed in 1994 can be determined from the transcripts of the seven colloquies given in 1996 and 1997. See *Commonwealth* v. *Quinones, supra* at 433 n.8 ("Transcripts or tape-recordings of other plea-taking proceedings presided over by the judge could demonstrate the judge's custom"). The plea colloquy, as reconstructed, is grossly inadequate as a matter of constitutional law as well as under our rules of criminal procedure. *Commonwealth* v. *Foster*, 368 Mass. 100, 102 (1975) ("as a matter of constitutional due process, a guilty plea should not be accepted, and if accepted must be later set aside, unless the record shows affirmatively that the defendant entered the plea freely and understandingly"). See also Mass. R. Crim. P. 12 (c) (5), 378 Mass. 866 (1979) (judge must "conduct a hearing to determine the voluntariness of the plea and the factual basis of the charge"). As the defendant contends, the judge's colloquy, as established by the evidence, "can hardly be described as a 'colloquy' at all because . . . the judge customarily does not seek to elicit any significant verbal response from the defendant." See *Commonwealth* v. *Quinones, supra* at 434 ("a brief colloquy that does not probe the defendant's mind will not do"). If the evidence presented by this defendant was not "sufficient[ly] credible and reliable . . . to rebut a presumption that the prior conviction was valid," *Commonwealth* v. *Lopez, supra* at 665, then it is difficult to imagine what evidence, short of a transcript of the actual colloquy, would be sufficient to rebut the presumption.

---

[10]One of the lawyers testified that from 1988 to 2000, the judge's plea colloquies became "a little bit more of a colloquy." This suggests that the plea practice in 1996 and 1997, the time of the tape-recorded pleas, would be comparable to (if not more complete than) the 1994 colloquy.

Once the defendant rebuts the presumption of regularity, "an evidentiary hearing may be warranted at which the burden will be on the Commonwealth to show that the defendant's plea proceedings were conducted in a way that protected his constitutional rights." *Id.* Although the motion judge erroneously concluded that the defendant did not meet his initial burden, she nevertheless conducted an evidentiary hearing.[11] We therefore consider whether the Commonwealth satisfied its burden of showing that the defendant's 1994 plea proceeding was adequate. We conclude that it did not.

The defendant posits that because he rebutted the presumption of regularity, it was error for the motion judge to rely on the plea judge's affidavit, which the defendant argues is hearsay. Assuming, without deciding, that the Commonwealth properly may submit affidavits as evidence during a hearing on a motion for a new trial when it has the burden of proof, the Commonwealth still did not meet its burden. The regular plea practice described in the plea judge's affidavit is contradicted squarely by the colloquies on the seven tape recordings, the colloquies defense counsel observed, and the typical colloquies described by the two attorneys who were subpoenaed by the defendant to testify at the hearing. Tellingly, it is contrary even to the plea judge's typical colloquy described by the Commonwealth's sole witness, Kokonowski. Approximately one-half of the questions that the plea judge averred were "included" in his "regular practice regarding" plea colloquies were either not mentioned during Kokonowski's testimony, or Kokonowski could not remember whether they were asked. Similarly, Kokonowski testified that the plea judge routinely asked three questions that were not referenced anywhere in the plea judge's

---

[11]The motion judge's findings of fact state that she "proceeded to hear evidence since, in the 1996 case, the tape of the proceeding rebutted the presumption." However, it is apparent that this evidentiary hearing was held at a minimum with respect to the 1994 plea proceeding. Near the beginning of the hearing, the motion judge said, "We're dealing with one case at a time." After the defendant submitted the recording for the 1996 plea, the motion judge said, "I'll take it under advisement, I'll listen to this recording. Now, as to the '94 case." The randomly selected tapes, the plea judge's affidavit, and all testimony were presented thereafter. In addition, the witnesses testified as to the plea judge's practice in 1994, and the plea judge's affidavit specifically referenced his practice as of 1994.

affidavit, the tape-recorded pleas, or any of the other witnesses' testimony.[12] Such vast inconsistencies between Kokonowski's testimony and the plea judge's affidavit are especially striking when compared to the consistency among the seven tape-recorded colloquies and the testimony of the defendant's three witnesses. There is also no support for the motion judge's finding that the plea judge's affidavit was "bolstered by the [two other] affidavits," because those affidavits are wholly conclusory. Neither one defined what the affiant meant by a "full and complete" or "thorough" colloquy, or described the actual content of the plea judge's routine plea colloquies. The Commonwealth did not present any other evidence that would suggest that the defendant's 1994 plea proceeding was adequate. Nor did the Commonwealth present any evidence that the judge's plea colloquies did not adhere to a consistently deficient pattern, or that the pattern in 1994 was different from the regular colloquy given in later years.

Moreover, even if the Commonwealth had established that the plea colloquy outlined in the judge's affidavit was representative of the one given to the defendant in 1994, it would be insufficient to show that the "plea proceedings were conducted in a way that protected [the defendant's] constitutional rights." *Commonwealth* v. *Lopez, supra* at 665. "A defendant's plea is not entered into 'freely and understandingly' unless he comprehends the nature of the crime to which he is pleading guilty." *Commonwealth* v. *Nikas,* 431 Mass. 453, 456-457 (2000). Here, even the judge's own affidavit reveals that he did not explain the elements of the crime, or ask if counsel explained the elements to the defendant, or ask the defendant to admit the facts.[13] See *Commonwealth* v. *Colantoni,* 396 Mass. 672, 679 (1986) (guilty plea not involuntary if record af-

---

[12]The questions concerned whether the defendant was under the influence of drugs or alcohol, whether the defendant understood what the Commonwealth had to prove, and whether the defendant's attorney advised him of his rights.

[13]The closest the plea judge comes to such an inquiry is, *"Counsel* do you or your client have any *questions* as to the facts" (emphasis added)? This inquiry is insufficient: it is not directed to the defendant and it does not require an admission to the facts. See *Commonwealth* v. *DelVerde,* 398 Mass. 288, 293-294 (1986), quoting *Henderson* v. *Morgan,* 426 U.S. 637, 650 (1976) (White, J., concurring) (conviction rests on defendant's admission of guilt).

firmatively shows one of above-mentioned questions). Nor did the Commonwealth present any other evidence that would show that the defendant had adequate notice of the charges to which he pleaded guilty. Thus, even based on the plea judge's affidavit, the record fails to establish by any means that the defendant sufficiently understood the elements or nature of the crimes to plead knowingly. See *Commonwealth* v. *Nikas, supra* at 457. See also *Commonwealth* v. *Sullivan*, 385 Mass. 497, 504 (1982) ("prejudicial constitutional error has occurred" when "defendant is unaware of the essential elements of the crime to which he is pleading"). Given this conclusion, we need not address the other shortcomings of the judge's colloquy. See *Commonwealth* v. *Nikas, supra* at 459-460 & n.8; *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 719 (1997).[14]

We reject the Commonwealth's contention that the defendant's argument must fail automatically because he did not allege that he suffered any specific harm from the deficient plea colloquy, or that he would not have pleaded guilty had he been given a proper colloquy. When a defendant has received a constitutionally inadequate plea colloquy, he is entitled to withdraw that plea. See *Commonwealth* v. *Foster*, 368 Mass. 100, 102 (1975). Here, the defendant submitted "sufficient credible and reliable evidence," *Commonwealth* v. *Lopez, supra* at 665, that the plea judge failed to ascertain whether the plea was given knowingly and voluntarily, and the Commonwealth failed to meet its burden to show otherwise. The defendant need not make any further showing in order to withdraw his plea. See *Commonwealth* v. *Nikas, supra* at 459-460; *Commonwealth* v. *Correa, supra* at 719-720, and cases cited.

We also reject the Commonwealth's suggestion that the

[14]The fact that the defendant and his lawyer signed a jury waiver form does not cure any of the defects in the plea colloquy. "The use of a written form referencing receipt of information . . . is an inadequate substitute for giving the advisement orally. To hold otherwise would be inconsistent with the plain language of [Mass. R. Crim. P.] 12 (c) (3), [378 Mass. 866 (1979)], which requires that advisements . . . be made 'on the record, in open court.' " *Commonwealth* v. *Rodriguez*, 52 Mass. App. Ct. 572, 575 (2001). We do not mean to denigrate use of these waiver forms. Even though a written waiver cannot substitute for the oral colloquy, we have noted that a signature on such a form is one of several facts that "bespeak the defendant's intention to consummate the plea bargain." *Commonwealth* v. *Grant*, 426 Mass. 667, 672 (1998).

defendant's argument is weakened because the defendant and his attorney at the 1994 plea hearing did not testify or submit affidavits. The defendant did not have a specific recollection as to what happened at the 1994 plea hearing. In such circumstances, it would be ironic to fault him for failing to submit an affidavit, given that a motion judge may reject a defendant's self-serving affidavit as not credible. *Commonwealth* v. *Grant*, 426 Mass. 667, 673 (1998). Similarly, where the judge, the defendant, and the prosecutor could not remember the 1994 plea hearing, no weight should be given to the fact that the defendant's attorney from the 1994 hearing did not testify as to any recollection of the 1994 hearing.

The motion judge expressed her concern that ruling in favor of the defendant could "open the floodgate for thousands of Motions for a new Trial by defendants who, years after sentencing, were faced with enhanced penalties." Rather than be concerned about "floodgate[s]," our proper concern is with the "thousands" of defendants who may have been deprived of the constitutional safeguards that should attend a change of plea. We cannot condone manipulating the *Lopez* burden-shifting standard to prevent defendants from rebutting the presumption of regularity, whether those defendants are rare or numerous. As the Appeals Court aptly cautioned nearly twenty years ago:

> "All this could be minimized if not wholly avoided, and justice better and more humanely administered in the first instance, if judges permitted themselves to be assisted by the carefully drafted and fully inclusive model questionnaires that have long been available. . . . We do not suggest that any model should be followed mechanically; indeed such a practice would be unwise because it could interfere with a probing exchange. Nevertheless a model can serve as a guide and checklist. We would suggest, as well, that a duty is cast on the lawyers on both sides to be alert and helpful if it appears that the judge through inadvertence may not be carrying out the full requirements of the rule." (Footnote omitted.)

*Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 501-502 (1985).

For the foregoing reasons we conclude that the defendant's

Commonwealth *v.* Colon.

motion for a new trial should have been allowed. Accordingly, the judgment is reversed and the finding of guilty is set aside. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*