In 1995, the Commonwealth lodged a series of delinquency complaints against the juvenile. The complaints were based on allegations that the juvenile, when he was between the ages of about eight and thirteen, committed numerous sexual assaults against his two half-sisters, including two counts of forcible rape as to one of them. In August of 1996, when the juvenile was fourteen years old, the cases were resolved through a so-called "Alford plea."[2] Under the plea agreement, the rape charges were reduced to indecent assault and battery, the juvenile was found delinquent based on three counts of indecent assault and battery, and the remaining charges were dismissed. A Juvenile Court judge committed the juvenile to the Department of Youth Services (DYS), where he underwent sex offender treatment. Although his commitment to DYS long since has lapsed, the juvenile continues to face collateral consequences from the adjudications of delinquency. Of most concern to him is the requirement that he register as a sex offender.[3]
In 2015, almost two decades after his plea agreement was accepted, the juvenile sought to withdraw his plea by filing a motion for new trial (accompanied by a motion for expert funds and a motion for an evidentiary hearing). In that motion, the juvenile argued that his plea counsel was constitutionally ineffective by failing to raise the state of the juvenile's mental health as a defense. He later added two "supplemental" motions for new trial. Through his first supplemental motion, the juvenile argued that the colloquy through which the plea was accepted was defective. After a nonevidentiary hearing, a different judge from the plea judge denied all of the juvenile's motions. Because we agree with the juvenile regarding the adequacy of the plea colloquy, we conclude that the motion judge erred in denying his motion for new trial. We do not reach the defendant's remaining claims.
Background. 1. Court-ordered psychological investigations. Prior to his plea being accepted, there were two court-ordered psychological evaluations of the juvenile.[4] As evidenced by the resulting reports, those evaluations raised serious "red flags" about the juvenile's mental health. Three examples will suffice. First, both psychologists appear to have accepted that the juvenile suffered from various mental disorders -- one psychologist cited posttraumatic stress disorder (PTSD)[5] and the other cited the juvenile's family's "history of depression and possible bipolar disorder" -- and both diagnosed the juvenile as having high levels of anxiety. Second, the juvenile described in detail auditory and visual hallucinations that he claims to have experienced. Third, the juvenile reported that he had no memory of having committed any sexual assaults, but that he did have a "split personality" issue, and his long-standing alter ego to whom he referred as "snake eyes" would do "bad stuff," of which he had no memory.[6]
2. Plea colloquy. We summarize the plea hearing, as evidenced by the transcript. The hearing began with the prosecutor reporting that, as a result of a lobby conference, the parties had agreed upon a plea agreement on the terms outlined supra. Defense counsel did not speak during this portion, except to signal his agreement with the plea agreement's terms and to clarify that it would be effected "by way of an Alford plea." Neither side offered an explanation as to why an Alford plea might be warranted here, nor did the judge inquire.
The judge then addressed the juvenile. Before asking him any questions, however, she informed him that she "intended" to find him delinquent. She then conducted a brief colloquy through which the juvenile acknowledged that he had had opportunity to discuss the case at length with his lawyer, guardian ad litem (GAL), and mother,[7] that he was willing to waive his right to a jury trial, that he had not consumed any alcohol or drugs, that no one had made any promises or threats to him, and that he was "comfortable with going forward in this way." The judge did not pose any questions regarding the juvenile's mental health.
At this point in the hearing, the factual allegations underlying the Commonwealth's case had not been discussed. Nevertheless, the judge announced at the conclusion of her questioning of the juvenile that she had found him delinquent. Only then did she request the prosecutor "for the record, [to] just give a very brief recitation of what you would have [presented]."
The prosecutor went on, in summary fashion, to describe two incidents involving sexual contact between the juvenile and his sisters. At no point after the prosecutor laid out the Commonwealth's factual allegations did the judge ask the juvenile about them. Nor did the judge even confirm that the juvenile, having heard the allegations on which the finding of delinquency would be based, wished to continue with his plea. In fact, except in responding to the brief questioning by the judge described above, the juvenile did not speak at the hearing.
Immediately after the prosecutor finished describing the first incident (on which the Commonwealth was basing two counts of indecent assault and battery), the judge pronounced that the facts were sufficient and "that's what the admission is to." Defense counsel thereafter indicated that his client would waive his rights of appeal as to the first incident, although he never actually stated that his client was conceding that the just-recited facts -- if proven -- would be sufficient to make out two counts of indecent assault and battery.[8] The colloquy between the judge and defense counsel regarding the prosecutor's description of the second alleged incident was somewhat more extensive, with the judge at least eliciting from counsel that he had discussed the facts with his client, that "[w]e have no question on the facts[,] [and that the juvenile] does admit to sufficient facts to sustain a finding."
What was not said at the hearing is as notable as what was said. At no point did the judge explain to the juvenile the elements of indecent assault and battery, the offense on which the delinquency findings would be based. Nor did defense counsel represent that he had explained those elements to his client. As already noted, the juvenile himself was never asked to make any comment with regard to the facts alleged. Although a GAL had been appointed to help protect the juvenile's interests and had participated in the lobby conference at which the plea agreement was reached, the GAL did not attend the plea hearing or otherwise offer any on-the-record endorsement of the agreement.[9] Finally, the judge made no findings that the juvenile's acceptance of the plea agreement was done voluntarily and intelligently.
Discussion. A valid plea "must be made voluntarily and intelligently." Commonwealth v. Hart, 467 Mass. 322, 325 (2014). That fundamental requirement is not diminished when the plea being offered is an Alford plea. See Commonwealth v. Nikas, 431 Mass. 453, 456-457 (2000).
"The intelligence requirement may be met in one of three ways: [1] the judge may explain the elements of the crime to the defendant; [2] the defendant's counsel may explain the elements of the crime to the defendant; or [3] the defendant may 'admit[ ] the facts constituting the crime ... even if he is not aware that the facts he admit[s] are the elements of the crime.' " Hart, 467 Mass. at 325, quoting Commonwealth v. Colantoni, 396 Mass. 672, 680 (1986). Here, the plea colloquy does not establish that any of these paths was followed: the judge did not explain the elements of indecent assault and battery (the offense to which the juvenile pleaded delinquent),[10] there was no representation from defense counsel that he had explained such elements to his client, and the juvenile never addressed, much less admitted, the factual allegations recited by the prosecutor. An observation we made in Commonwealth v. Hunt, 73 Mass. App. Ct. 616, 621-622 (2009), applies equally well here:
"Here, the judge was apparently familiar with the facts and circumstances underlying the complaint that charged the defendant with [indecent] assault and battery. However, [s]he did not probe the [juvenile's] understanding of the elements of the crime with any of the accepted procedures. It is not enough that the judge [her]self is familiar with the factual basis for the [juvenile's] plea, because [her] understanding of the elements does not inform the intelligence of the [juvenile's] choice. We appreciate that these events transpired in a busy [Juvenile] Court where the judge was laudably attempting to shepherd the obviously troubled [juvenile] through the criminal justice system in an attempt to provide [him] with help for mental health issues. However, in the process, [she] short-circuited the necessary record-based procedures which enable an appellate court to determine that a [delinquency] plea was properly made and accepted."
There is an additional problem here regarding the voluntariness of the plea. See Hart, 467 Mass. at 325. Despite the mental health concerns that were flagged by reports that the court itself had ordered, the judge made no inquiry whatsoever about the state of the juvenile's mental health at the time his change of plea was offered and accepted. See Commonwealth v. Colon, 439 Mass. 519, 522 n.6 (2003) (criticizing failure by plea judge to inquire about defendant's mental condition where judge had reason to know that defendant was schizophrenic and took medication twice each month). This is not a case where the judge grappled with the mental health issues presented and nevertheless found that the plea was voluntarily offered. See Hunt, 73 Mass. App. Ct. at 620. Here, there was no indication that the judge considered the issues raised by the mental health evaluations performed at the court's request, and the judge, in any event, made no finding that the juvenile offered his plea voluntarily.
The shortcomings in the plea colloquy were not overcome by the fact that the juvenile had the opportunity to consult with his mother about the plea agreement.[11] See generally, Commonwealth v. Yardley Y., 464 Mass. 223, 227 (2013) (recognizing that, in order "to protect [juveniles] from the possible consequences of their immaturity[,] ... [w]here a juvenile is fourteen or older, there should ordinarily be a meaningful consultation with the parent, interested adult, or attorney to ensure the juvenile has knowingly and intelligently waived a right" [citations and quotations omitted] ). In fact, the mother faced obvious conflicts of interest because the victims here were also her children. Indeed, the police report indicates that the mother first reported the sexual assaults to the police because she did not want her son to return to the family home. In addition, she presumably (and understandably) wanted to avoid the necessity of having her daughters testify at a trial. Under the specific circumstances presented, the mother's actively supporting the plea agreement, if anything, raised further concerns about whether the juvenile gave his plea voluntarily. As noted, although a GAL had been appointed to help protect the juvenile's interests, the GAL did not appear at the plea hearing, and hence there was no record of any inquiry into his views.
"Where the deficiencies in the plea colloquy arise from a failure to inquire into the voluntariness of the plea or the failure to ascertain that the [juvenile] has knowledge of the elements of the charges against him ... we have not required a showing of materiality." Commonwealth v. Correa, 43 Mass. App. Ct. 714, 719 (1997). We therefore reverse the order denying the first supplemental motion for new trial, reverse the three adjudications of delinquency, and set aside the findings.[12]
So ordered.
reversed

See North Carolina v. Alford, 400 U.S. 25, 37 (1970) ("An individual accused of a crime may voluntarily, knowingly, and understandingly [plead guilty] even if he is unwilling or unable to admit his participation in the acts constituting the crime").

The Sex Offender Registry Board (SORB) initially classified the juvenile as a level two sex offender, but that classification has not been finalized. We note that because the sex offender registry statute had not been enacted at the time the juvenile was adjudicated delinquent, the plea judge did not have the opportunity to consider whether to exempt him from having to register. See G. L. c. 6, § 178E (f ).

Two additional psychological reports are also before us, both of which were done at the request of the juvenile's counsel. One was performed in 1996 to aid in evaluating treatment options; the other was performed in 2012, and produced in a 2015 report to support the juvenile's new trial motion. Given how we rule, we need not consider these postdelinquency evaluations.

Three potential sources of trauma were noted: alleged sexual abuse of the juvenile by his grandfather, the juvenile's having witnessed his father commit significant physical violence against his mother, and the juvenile's having been beaten on his head with a chain by an adult babysitter.

To be clear, we note that the psychologists did not come to any definitive conclusions about the extent of any mental illness that he might have been experiencing. In fact, some statements in the report cast some doubt about the juvenile's statements. For example, one of the psychologists expressed his view that the juvenile had "a significant tendency toward suggestibility." He also was of the opinion that the juvenile's "hallucinatory experiences do not have the usual quality of hallucinations experienced in the context of psychotic illness; these more likely represent either a dissociative variant of intense imagination or malingering of mental illness."

The questioning went to the amount of time the juvenile had had to discuss the case with his lawyer, GAL, and mother, not to the content of those conversations.

We note that it is not immediately apparent how the prosecutor's description of the first incident would support two counts of indecent assault and battery.

At one point, defense counsel requested that the judge have "the guardian and the parents sign in this case" (an apparent reference to a jury trial waiver form). The judge had the mother sign a waiver form, but she passed over counsel's suggestion to get the GAL involved.

Our cases establish that the elements of ordinary assault and battery -- much less of indecent assault and battery -- are not self-explanatory or commonly understood. See Commonwealth v. Hunt, 73 Mass. App. Ct. 616, 622 (2009).

Although the mother did not speak at the plea hearing, it is plain that she favored her son's accepting the plea agreement. The judge made several references to the juvenile's ability to consult with his mother, and she had the mother herself sign a waiver form in addition to the juvenile. It appears that form, which we understand to have been one to waive the juvenile's right to a jury trial, was lost when the court file was purged.

The Commonwealth may elect to have the delinquency complaints amended to reinstate the original charges. See Commonwealth v. Rollins, 354 Mass. 630, 632-633 (1968) (prosecutor permitted to obtain second indictment for murder in first degree after defendant was permitted to withdraw his plea of guilty to murder in second degree and sentence was vacated).